Sharon Kay CARTER, Appellant,

v.

Dennis Warren SCHILB, Respondent.

No. WD 48339.

Missouri Court of Appeals,
Western District.

June 7, 1994.

Dale C. Doerhoff, Cook, Vetter, Doerhoff & Landwehr, Jefferson City, for appellant.

Lori J. Levine, Douglas W. Hennon, Carson & Coil, P.C., Jefferson City, for respondent.

Before LOWENSTEIN, P.J., and BERREY and SPINDEN, JJ.

LOWENSTEIN, Presiding Judge.

This is an appeal from a bench trial which denied Sharon Carter's (Sharon) motion, as custodial parent, to permit the removal of her daughter (M) from Missouri. Sharon and her new husband proposed a move, with M, from Jefferson City, Missouri to Arizona. Dennis Schilb (Dennis), M's father, objected. The court denied the motion. Sharon's two points on appeal are the court erred in denying her motion to permit removal because: 1) the denial was not in M's best interest; and 2) it violated Sharon's constitutional right to freedom of personal choice in matters of marriage and family life as protected by the Fourteenth Amendment to the Constitution of the United States. This court affirms.

Sharon and Dennis were married in June, 1976. They had two daughters S, born September 20, 1978, and M, born May 2, 1986. Sharon and Dennis separated in September, 1990; the marriage was dissolved May, 1991. At the time of the divorce, S was twelve and M was four years old. S was allowed to choose which parent she lived with, she chose to live with her father in Prairie Home. M lived with her mother in Jefferson City. The dissolution decree provided for joint legal custody of the girls, with primary physical custody of S with Dennis, and M with Sharon. Sharon has remarried, and is now married to Dr. James Carter. Dennis is engaged to Lisa, whom he has dated for several years.

There have been brief periods of estrangement between Sharon and her older daughter following the dissolution. Initially, S was going to join Sharon, M, and Jim in the move to Arizona but, upon further reflection, changed her mind. Additional problems arose due to the proposed move. S feels her mother is leaving her and trying to take her sister away from her.

M is a bright, well adjusted child who gets along well with her peers. She has a close relationship with both parents, as well as her stepfather.

Sharon and Jim began talking about moving to Arizona in the late summer of 1992. The move to Arizona was triggered by Dr. Carter's disability, and the need for his parents, who were ill, to have somebody close take care of them. Dr. Carter had been in private practice as a cardiovascular surgeon. In October, 1992 he had to cease his practice as a cardiovascular surgeon due to serious back problems. The Carters live off Dr. Carter's disability policy, which pays in excess of $10,000 a month. Dr. Carter spoke of trying to find employment, possibly in plastic surgery. He has not tried to find other employment in Missouri. Dr. Carter said if they were unable to leave Missouri he might look for employment in Joplin, Kansas City or St. Louis.

In October, 1992 Sharon and Jim Carter sold their Jefferson City home and bought a new one in Gilbert, Arizona. They immediately moved their belongings to their new home. The home has a swimming pool, is close to an elementary school and church, and is in a neighborhood with children M's age. The Carter's said even if they were unable to move to Arizona, they would keep the house as a second home, or to use as an investment since, if sold, it would return a profit.

Dennis learned of the Carters' plans to move to Arizona from S, and confronted

Sharon. He told Sharon he was opposed to M's removal from Missouri. Dennis was not told of their address or where M would be attending school. The Carters rented a condominium in Columbia while waiting for the court's ruling.

Sharon testified her niece and her sister, M's godmother, were in Arizona. There was evidence of family in mid-Missouri as well. M's paternal grandparents are in Prairie Home, and she sees them every weekend she visits her father. Her maternal grandmother, two uncles and three aunts also live nearby.

An extensive visitation schedule was proposed regarding visitation of both girls with their parents. The guardian ad litem, in his review of the situation, and with regard to S, noted the proposed visitation schedule would not be successful if S chose to work during the summer, while maintaining her normal school schedule and athletic activities. The guardian ad litem did not make a recommendation regarding the proposed move.

The trial court, using the best interest of the child standard, denied the motion to permit removal of M from Missouri. No findings of fact were requested. To the parents credit in this case, the record shows they were both interested in doing what they believed best for the children.

■ Review by this court is controlled by Rule 73.01 and *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). The judgment may be reversed only if: 1) the judgment is not supported by substantial evidence; 2) is against the weight of the evidence; or, 3) results from an erroneous declaration or application of law. *Id.* at 32. The judgment is to be set aside only if this court has a firm belief the judgment is wrong. *Id.* at 32. Where there is conflicting evidence, this court defers to the trial court. *Id.* This court will affirm the trial court's judgment even if there is evidence which would support a different conclusion. *Wild v. Holmes*, 869 S.W.2d 917 (Mo.App.1994).

■ Section 452.377, RSMo.1986 states in pertinent part:

"A person entitled to the custody of a child shall not change the residence of the child to another state or remove the child from this state for a period of time exceeding ninety days except upon order of the court or with the written consent of the parties with custody or visitation rights...."

In determining whether to grant the custodial parent's motion, the paramount concern is the best interests of the child. *Tucker v. Tucker*, 778 S.W.2d 309, 312 (Mo.App.1989). *O'Leary v. Stevenson*, 782 S.W.2d 109, 111 (Mo.App.1989). There are four factors which have been recognized in looking at the propriety of allowing the custodial parent to remove a child from the state. *Michel v. Michel*, 834 S.W.2d 773 (Mo.App.1992).

■ First, whether the prospective advantages of the move will improve the general quality of life for the parent and the child. *Wild*, 869 S.W.2d at 919. This point favors the father in this case. Economically speaking, there is no evidence Sharon and Jim will be better off in Arizona. Jim will collect on his disability policy wherever they live. There is no evidence Sharon plans to reenter the work force, and Jim may, or may not begin working again. Additionally, Jim has not tried to find a job in Missouri; Jim said if the court ruled against Sharon on her motion to remove, he would look for a job in Missouri. Whether the general quality of life would improve is unclear. While the evidence indicates M would have a pleasant life in Gilbert, Arizona, there is no evidence the same is not true if the family stayed in Missouri. There is nothing to indicate the quality of her life would be diminished by remaining here. *Wild*, 869 S.W.2d at 919. Furthermore, there was no demonstration the Carters needs could not be met in Missouri. *Michel*, 834 S.W.2d at 778; See also *Tucker*, 778 S.W.2d at 312. The evidence indicates M will be closer to both her father and sister, and allow her to maintain familial relationships (grandparents, aunts and uncles) she has if she stays in Missouri. The mere desire, verses the need to move is not sufficient. *Koenig v. Koenig*, 782 S.W.2d 86 (Mo.App.1989). This factor favors the father.

■ The second factor is the integrity of the custodial parents motives in relocating.

Nothing impugns the mother's motives in moving. *Wild*, 869 S.W.2d at 919.

Third, the integrity of the noncustodial parent's motives for opposing the relocation, and the extent to which it is intended to secure a financial advantage with respect to continuing child support. *Id.* at 919. First, Dennis pays no child support; therefore, that part of the third factor is not controlling. Dennis testified he objected to the motion based on the effect the move will have on the sisters' relationship. He stated he is concerned about his relationship with M, and the effect on the girls. While the sisters don't currently live together, the court could have deemed it important they have ample opportunity to see one another. The potential move had a significant impact on S; she felt like her mother was leaving and taking her sister with her. As a result of this stress, S developed a gastric ulcer, and her grades suffered at school. Evidence favorable to the judgment also showed Dennis was concerned about his relationship with M—they shared a close relationship and Dennis is involved in both girls' lives.

The fourth factor is the realistic opportunity for visitation which can provide an adequate basis for preserving and fostering the noncustodial parent's relationship with the child if relocation is permitted. *Wild*, 869 S.W.2d at 919. The visitation schedule proffered by Sharon was generous but there are questions as to its feasibility. The travel time alone would take at least one-half a day each leg of the trip considering the two to two-one half hour plane trip between Kansas City and Phoenix, and the two and one half hour drive between Prairie Home and Kansas City. This makes the weekend visitation suggested less feasible. If it is feasible, will be less quality time spent between the visiting child and her noncustodial parent and sister because of the travel time. All the travel will be burdensome and tiring on the children. This factor favors Dennis, because if M remains in the state, he and S can continue to have meaningful visitations with her; and S will be able to see Sharon, if she chooses.

In light of the fact that three out of the four factors favor Dennis, and the one favoring Sharon does not go to improved conditions for the children, this court agrees it is in the best interest of the children if M remains in Missouri. The evidence adequately supports the trial court's result. Point one is denied.

Sharon's second point on appeal is that the denial of her motion infringes on her constitutional right of freedom of personal choice in matters of marriage and family life. It would appear her objection is to the application of the statute rather than the constitutionality of the statute itself. Sharon's argument for moving to Arizona appears to be because she believes she is entitled to move for her new husband, and that the move will not be detrimental to M's interests or well-being.

This court noted in *Samuels v. Samuels*, 713 S.W.2d 865, 868 (Mo.App.1986) the movant is not entitled to an order which permits removal of the child, just because she asks for one. There must be and adjudication by the court, absent consent by the noncustodial parent, and a finding of the best interest of the child.

Sharon cites no case, and none is apparent which has held § 452.377 infirms the constitutional right of freedom of personal choice in matters of marriage and family life. Sharon and Jim are free to move to Arizona they, however, can not take M, since it is not in her best interest to move from Missouri. This point is denied.

The judgment is affirmed.

All concur.