Lila Morris SHAW, Respondent,

v.

**Craig Allen SHAW, Appellant.**

**No. WD 53317.**

Missouri Court of Appeals,
Western District.

Sept. 23, 1997.

---

Kenneth Stanley Clay, Columbia, for Appellant.

Gary Stamper, Columbia, for Respondent.

SPINDEN, Judge.

Craig Shaw appeals the circuit court's decision permitting his ex-wife, Lila Shaw Lowther, to move with the couple's eight-year-old daughter, Cassandra, from Columbia to Florida where Lowther's husband had accepted a job. Shaw also appeals the circuit court's reduction of his visitation rights and its using conditional language regarding future modification of child custody. We affirm the circuit court's decision regarding permission for the move but remand for cor-

rection of the judgment concerning visitation and future modification of custody.

The circuit court dissolved Shaw's and Lowther's marriage on August 8, 1990. The court ordered joint legal custody of their daughter and granted Lowther primary physical custody. The court ordered that Shaw have visitation rights every weekend and during summer vacation.

On June 21, 1991, Lowther remarried, and she gave birth to a child a month later. In late 1995, Lowther asked the circuit court to modify its custody order, and on December 29, 1995, the court ordered joint legal and physical custody. The court also increased child support.

On May 20, 1996, Lowther asked the court's permission to move with Cassandra to Val Harbor, Florida, where Lowther's husband had accepted a job. The circuit court convened a hearing on the motion on July 26, 1996.

Lowther testified that she and her husband, who was skilled as a 3–D graphic animator, had trouble finding work in Columbia and that their previous year's income was approximately $8000. She said that she had also found a job in Florida and that the couple's annual income would rise to approximately $40,000. Lowther said that she had investigated schools in Florida and found that they could provide the same educational and support services as Missouri in helping Cassandra with her disabilities.

Shaw testified that he was involved in his daughter's educational and social activities and in her health care and that he had rarely missed opportunities to visit her. Shaw's parents, the only living grandparents, reside in Missouri and maintain a close relationship with Cassandra. Shaw said that his moving to Florida would be economically and logistically impossible. He opined that his annual salary of approximately $22,000 would impede his maintaining the same level of relationship he has with his daughter if she moves to Florida.

Noting the significant increase in Lowther's income and that the girl's health and educational needs could be met in Florida, the circuit court authorized Lowther's moving with the girl to Florida. Although no one requested it, the circuit court decreased the summer visitation from six weeks[1] to four weeks. It did not provide for Christmas visitation after 1997. Further, the judge ordered that "failure of visitation by either party will cause said child to be returned to the State of Missouri as the Court may deem appropriate or that visitation or costs of same modified as deemed appropriate."

Shaw contends on appeal that the circuit court erred in permitting the move to Florida. He also argues that the court's reduction of visitation was not supported by substantial evidence that the reduction was in the child's best interests, and he complains that the circuit court erroneously made its judgment contingent and prospectively modifiable on the happening of a future event.

■ The courts' paramount concern in deciding whether or not to permit a custodial parent to move a child to another state is the child's best interests. *Carter v. Schilb*, 877 S.W.2d 665, 667 (Mo.App.1994). A good environment and stable home are primary considerations in determining a child's best interests. *Petty v. Petty*, 760 S.W.2d 555, 557 (Mo.App.1988).

■ Four factors are important to determining the propriety of allowing a custodial parent to remove a child from the state. *Carter*, 877 S.W.2d at 667. These are: (1) the prospective advantages of the move, including a consideration of whether or not the move will improve the general quality of life for the custodial parent and child; (2) the custodial parent's motives in relocating, including a consideration of whether or not he or she is attempting to defeat or to frustrate the noncustodial parent's visitation rights; (3) the noncustodial parent's motives for opposing relocation, including a consideration of the extent to which it is intended to secure financial advantage in continuing child sup-

---

1. Before entering the modification in this case, the circuit court had ordered that Shaw's summer visitation rights would increase to seven weeks in 1997 and to eight weeks each summer after that.

port; and (4) the realistic opportunity for visitation which can provide an adequate basis for preserving and fostering the noncustodial parent's relationship with the child if the move is permitted. *Id.* at 667–68 (relying on *Michel v. Michel,* 834 S.W.2d 773, 777 (Mo. App.1992)).

■ The prospective advantages of the move weigh in favor of Lowther's moving with her daughter to Florida. The advantage of a highly improved economic situation for Lowther and her husband in Florida are obvious. Florida schools are equally capable of aiding Cassandra with her disabilities.

As to the parents' motives, both expressed nothing but love and concern for their daughter's best interests, and both indicated their belief that having a significant and meaningful relationship with their daughter was important. These factors weigh evenly for Lowther and Shaw.

■ The distance between Columbia and Val Harbor will obviously hamper Shaw's visitation of his daughter. He will not be able to continue the weekend visits or his participation in Cassandra's school and social activities. Although a child's move to another state obviously complicates the noncustodial parent's visiting the child, interference with the noncustodial parent's visitation privileges is not an "insuperable obstacle." *Simpher v. Simpher,* 770 S.W.2d 488, 489 (Mo. App.1989). "Even where removal will make visitation more difficult, a trial court may properly permit removal of the children when it is in their best interests." *In re Marriage of Cornish,* 780 S.W.2d 62, 65 (Mo. App.1989). "In our highly mobile society, it is unrealistic to inflexibly confine a custodial parent to a fixed geographical area, if removal to another area for reasons such as change of employment, remarriage, etc., is consistent with the best interest of the minor children."

*Michel,* 834 S.W.2d at 776 (citing *In re Marriage of Greene,* 711 S.W.2d 557, 564 (Mo. App.1986)). Shaw's relationship with Cassandra can be preserved to a significant extent by a provision for frequent telephone calls and a generous visitation schedule during school breaks and summer vacation.

After reviewing these four factors, we do not have a firm belief that the circuit court's decree was wrong. We, therefore, affirm the circuit court's decision permitting Lowther's relocation with Cassandra to Florida.

In his next point, Shaw challenges the visitation schedule changes made by the circuit court. He argues that the circuit court's reduction in his visitation schedule lacked substantial evidence that the reduction was in his daughter's best interests.

■ Shaw is correct that modification of visitation must be supported by evidence that the modification serves the child's best interests. Section 452.400.2, RSMo 1994. The criteria used in modifying visitation is the same "best interests" standard which applies to modifying custody—"that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child."[2] *Dover v. Dover,* 930 S.W.2d 491, 494 (Mo.App.1996) (citing § 452.410.1, RSMo 1994).

■ Missouri courts presume that a child's frequent and meaningful communication with both parents is in the child's best interest. *Id.* at 496. "Substantial summer visitation with a non-custodial parent who lives at a distance is particularly important because it represents the best opportunity for the children to have meaningful contact with that parent." *Id.* When neither parent requests a reduction in visitation rights, and the circuit court is not presented evidence

---

2. The factors which the court must consider are enumerated in § 452.375.2, and include: "(1) [t]he wishes of the child's parents as to his custody; (2)[t]he wishes of a child as to his custodian; (3)[t]he interaction and interrelationship of the child with his parents, his siblings, and any other person who may significantly affect the child's best interests; (4)[t]he child's adjustment to his home, school, and community; (5)[t]he mental and physical health of all individuals involved, including any history of abuse of any individuals ...; (6)[t]he needs of the child for a continuing relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child; (7)[t]he intention of either parent to relocate his residence outside the state; and (8)[w]hich parent is more likely to allow the child frequent and meaningful contact with the other parent."

establishing that a parent is unfit, a reduction in visitation schedule is error. *Hadfield v. Cannell,* 907 S.W.2d 283, 285–86 (Mo.App. 1995).

■ Neither parent in this case requested a decrease in visitation. Both have agreed that Cassandra's having a close relationship with both of them is important. Shaw has been an active and involved parent. Considering the close relationship between him and his daughter and the elimination of regular visitation which will necessarily occur when his daughter moves to Florida, we do not discern any basis for finding that the reduction in Christmas vacation and summer vacation is in the child's best interests. We, therefore, remand this case to the circuit court with instruction that it modify its order concerning Shaw's visitation during Christmas and summer vacation.

■ In his third point, Shaw complains that the circuit court's order was improperly contingent. The order said, "That the minor child may be moved to the State of Florida contingent upon said minor child having reasonable visitation with Respondent which shall include but not be limited to ... [specified occasions]." It also said, "That failure of visitation by either party will cause said child to be returned to the Sate of Missouri as the Court may deem appropriate or that visitation or costs of same modified as deemed appropriate." Shaw contends that the circuit court erred in making Lowther's relocation to Florida contingent upon future visitation. We agree.

Missouri courts have consistently held that such conditional judgments are unenforceable. *Burch v. Burch,* 805 S.W.2d 341, 343 (Mo.App.1991). The *Burch* court said:

> A conditional judgment, that is one whose enforcement is dependent upon the performance of future acts by a litigant and which is to be annulled if default occurs, is void. [citation omitted].

> In particular, provisions of dissolution decrees which order an automatic change of child custody upon the happening of some event in the future have consistently been held unenforceable. As stated in Haldeman v. Haldeman, 685 S.W.2d 570, 571

(Mo.App.1984), such an order "improperly predetermines what would constitute a significant change in circumstances to justify a change in custody."

*Id.*

The circuit court's judgment permitting the child's move to Florida with her mother is affirmed. We remand, however, for restoration of the eight-week summer vacation, and provision for Christmas vacation after 1997, and for the correction of the judgment eliminating the conditional language in the order.

BERREY, P.J., and SMART, J., concur.