**William Paul SADLER, Respondent,**

v.

**Cindy Lee FAVRO (f/k/a Sadler), Appellant.**

**No. WD 57426.**

Missouri Court of Appeals, Western District.

July 25, 2000.

Susan Ford Robertson, Columbia, for appellant.

Sara Catherine Michael, Jefferson City, for respondent.

Before BRECKENRIDGE, P.J., LOWENSTEIN and ELLIS, JJ.

PATRICIA BRECKENRIDGE, Judge.

Cindy Lee Favro (Mother) appeals the trial court's refusal to allow her to relocate the primary residence of the parties' child from Holts Summit, Missouri, to St. Louis, Missouri. Wife's former husband, William Paul Sadler (Father), had filed an objection to Mother's proposed relocation, which the trial court sustained. Mother contends that the trial court's decision consti-

tuted a misapplication of the law, was against the weight of the evidence, and was not supported by substantial evidence. Because this court finds that the trial court applied an incorrect standard in determining whether Mother should be permitted to relocate the minor child's primary residence, the judgment of the trial court is reversed and the cause is remanded.

**Factual and Procedural History**

Mother and Father were married on April 8, 1995. Their son, Jared, was born on July 19, 1996. Mother and Father were divorced on August 5, 1998. In its judgment of dissolution, the trial court granted Mother and Father joint legal custody of Jared. The court awarded Mother primary physical custody of Jared, subject to Father's reasonable visitation rights. Pursuant to the parties' plan of joint custody and visitation, which the trial court approved, Father's visitation included alternate weekends from Friday at 3:30 p.m. to Sunday at 5:00 p.m., every Wednesday evening from 3:30 p.m. to 6:30 p.m., and alternating holidays. Father's summer visitation consisted of alternating one-week periods of physical custody. The plan also provided that the party who was to assume custody was responsible for providing transportation. The court ordered Father to pay Mother child support in the amount of $402 per month.

In September of 1998, Mother notified Father that she wanted to move Jared to Columbia, Missouri. Mother told Father her reason for moving was that she wanted to make a new home for Jared with her fiancé, Kevin Vollet. Father filed an objection to Mother's request to move to Columbia. Following a hearing in October of 1998, the trial court sustained Father's objection and denied Mother's request to relocate Jared to Columbia.

On December 11, 1998, Mother notified Father by certified mail that she wanted to move Jared to St. Louis, Missouri. Again,

Mother told Father her reason for moving was that she wanted to make a new home for Jared with her fiancé. In response to Mother's request, Father filed a motion to modify the judgment of dissolution to award him primary physical custody of Jared and child support. In the alternative, Father filed an objection to Mother's proposed relocation of Jared's principal residence.

The trial court held a trial on Father's motion to modify custody and his objection to Mother's proposed relocation of Jared's residence to St. Louis on February 9, 1999. At trial, Father testified that he was opposed to the relocation because he believes the move is meant to deny him access to Jared. Father cited the fact that the move would cause him to lose 40 Wednesday night visits a year with Jared, which are significant to maintain his relationship with Jared, then two and one-half years old. According to Father, Mother's proposed parenting plan, if she were allowed to move, does not compensate him for the missed visitation. Father believes it is in Jared's best interest that both parents reside in the Jefferson City area so that both can participate in his future school activities, sports, church activities, and Boy Scouts. Father testified that if Jared lived in St. Louis, it would be "practically impossible" for him to be active in sports and church activities due to the parties' visitation schedule. Father also testified that the drive to and from St. Louis would create an unnecessary hardship on both him and Jared.

In response, Mother testified that she wants to move to St. Louis because Mr. Vollet, whom Mother was to marry four days after the trial, had a house and a job in St. Louis, and had been unable to find employment in Jefferson City. Mother, who was employed in Jefferson City, testified that she was pregnant with Mr. Vollet's child, and if she were allowed to move to St. Louis, she would be able to quit her job and stay at home to raise Jared and

her new child. Mother also believes the move would be good for Jared because Mr. Vollet's extended family resides in St. Louis, and St. Louis has more educational and cultural resources.

Mr. Vollet testified at the trial regarding his efforts to find employment in the Jefferson City area, although prior to his testimony, the trial judge informed the parties that Mr. Vollet's ability to get a job in Jefferson City was not an issue in the case. Mr. Vollet was employed by the Missouri Department of Transportation. He initially worked in the Jefferson City office, but requested that he be transferred to the St. Louis office in September of 1997. Mr. Vollet testified that he asked to be transferred back to Jefferson City in October of 1998, and had been seeking employment in Jefferson City since that time. While he had not yet found a job, he had not given up his job search and was still on the transfer list in the Department of Transportation. Mr. Vollet testified that he believes he eventually will be able to find a job in Jefferson City.

At the conclusion of the evidence, the trial court denied Father's motion to modify custody, and sustained Father's objection to Mother's proposed relocation of Jared's residence to St. Louis. Mother filed this appeal.[1]

## Standard of Review

Appellate review of the trial court's judgment denying a custodial parent's request to relocate the minor child's principal residence is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *Carter v. Schilb*, 877 S.W.2d 665, 667 (Mo.App.1994). The judgment will be affirmed if it is supported by substantial evidence, it is not against the weight of the evidence, and does not erroneously declare or apply the law. *Id.* This court reviews the evidence, and any reasonable inferences therefrom, in the light most favorable to the trial court's judgment. *Thom-*

---

1. Father does not appeal the denial of his motion to modify custody.

as v. Thomas, 989 S.W.2d 629, 633 (Mo. App.1999).

## The Trial Court Applied an Incorrect Standard to Mother's Request to Relocate the Minor Child's Principal Residence

Mother's sole point on appeal is that the trial court's decision sustaining Father's objection and denying her request to relocate Jared's principal residence from Holts Summit to St. Louis constituted a misapplication of the law, was against the weight of the evidence, and was not supported by substantial evidence. The statute which governs a request to relocate the minor child's principal residence is § 452.377, RSMo Cum. Supp.1999.[2] This statute provides that a party seeking to relocate the child's principal residence must provide notice of the relocation to any party with visitation or custody rights to the child. Section 452.377.2. If the nonrelocating party objects to the relocation, the statute sets forth the procedure for obtaining permission to relocate from the court. Section 452.377 reads, in pertinent part, as follows:

1. For purposes of this section and section 452.375, **"relocate"** or **"relocation"** means a change in the principal residence of a child for a period of ninety days or more, but does not include a temporary absence from the principal residence.

2. Notice of a proposed relocation of the residence of the child, or any party entitled to custody or visitation of the child, shall be given in writing by certified mail, return receipt requested, to any party with custody or visitation rights. Absent exigent circumstances as determined by a court with jurisdiction, written notice shall be provided at least sixty days in advance of the proposed relocation. The notice of the proposed relocation shall include the following information:

(1) The intended new residence, including the specific address and mailing address, if known, and if not known, the city;

(2) The home telephone number of the new residence, if known;

(3) The date of the intended move or proposed relocation;

(4) A brief statement of the specific reasons for the proposed relocation of a child, if applicable; and

(5) A proposal for a revised schedule of custody or visitation with the child, if applicable.

\* \* \*

7. The residence of the child may be relocated sixty days after providing notice, as required by this section, unless a parent files a motion seeking an order to prevent the relocation within thirty days after receipt of such notice. Such motion shall be accompanied by an affidavit setting forth the specific factual basis supporting a prohibition of the relocation. The person seeking relocation shall file a response to the motion within fourteen days, unless extended by the court for good cause, and include a counter-affidavit setting forth the facts in support of the relocation as well as a proposed revised parenting plan for the child.

\* \* \*

9. The party seeking to relocate shall have the burden of proving that the proposed relocation is made in good faith and is in the best interest of the child.

10. If relocation is permitted:

(1) The court shall order contact with the nonrelocating party including custo-

**2.** All statutory references are to the Revised Statutes of Missouri Cumulative Supplement 1999, unless otherwise indicated.

dy or visitation and telephone access sufficient to assure that the child has frequent, continuing and meaningful contact with the nonrelocating party unless the child's best interest warrants otherwise; and

(2) The court shall specify how the transportation costs will be allocated between the parties and adjust the child support, as appropriate, considering the costs of transportation.

\* \* \*

Thus, pursuant to § 452.377.9, Mother had to prove that her proposed relocation from Holts Summit to St. Louis was made in good faith and was in Jared's best interest. Mother claims that, in determining whether she met her burden of proof, the court applied a different standard, and also failed to consider her proposed relocation in light of the following four factors:

(1) the prospective advantages of the move, including a consideration of whether or not the move will improve the general quality of life for the custodial parent and child; (2) the custodial parent's motives in relocating, including a consideration of whether or not he or she is attempting to defeat or to frustrate the noncustodial parent's visitation rights; (3) the noncustodial parent's motives for opposing relocation, including a consideration of the extent to which it is intended to secure financial advantage in continuing child support; and (4) the realistic opportunity for visitation which can provide an adequate basis for preserving and fostering the noncustodial parent's relationship with the child if the move is permitted.

*Shaw v. Shaw,* 951 S.W.2d 746, 748–49 (Mo.App.1997). Courts of this state have routinely held that these factors are important in determining whether a custodial parent should be allowed to remove a child from the state. *See id.* at 748; *Riley v. Riley,* 904 S.W.2d 272, 277 (Mo.App.1995); *Carter,* 877 S.W.2d at 667; *Michel v. Michel,* 834 S.W.2d 773, 777 (Mo.App.1992). The cases which have held that these factors are relevant to the court's determination of whether to allow a custodial parent to remove a child from the state were all decided under the prior version of § 452.377. Under the prior version of the statute, § 452.377, RSMo 1994, the custodial parent had to receive the court's permission to relocate the minor child's principal residence only if the relocation was going to be outside of Missouri.[3]

■ To determine if the four factors which were important to the propriety of allowing a custodial parent to remove the minor child from the state under the prior version of § 452.377, continue to be important to determining whether a party should be allowed to relocate the minor child's principal residence anywhere, including within the state, under the amended version of § 452.377, it is necessary to construe the amended version of § 452.377. When construing a statute, courts must "ascertain the intent of the legislature from the language used and give effect to that intent, if possible, and to consider the words used in their plain and ordinary meaning." *Butler v. Mitchell–Hugeback, Inc.,* 895 S.W.2d 15, 19 (Mo. banc 1995).

The plain language of the amended § 452.377 indicates that the first three factors cited in *Shaw* and other cases remain

**3.** Section 452.377, RSMo 1994, provided as follows:

A person entitled to the custody of a child shall not change the residence of the child to another state or remove the child from this state for a period of time exceeding ninety days except upon order of the court or with the written consent of the parties with custody or visitation rights. Where the noncusto-

dial person has been given visitation rights by the custody decree, such court permission may be granted only after notice to the person having visitation rights and after opportunity for hearing. Violation of a court order under this section may be deemed a change of circumstance under section 452.410, allowing the court to modify the prior custody decree.

important considerations for the trial court in determining whether to allow relocation of the minor child's principal residence. Factor (1), "the prospective advantages of the move, including a consideration of whether or not the move will improve the general quality of life for the custodial parent and child," *Shaw*, 951 S.W.2d at 748, is pertinent to the determination of whether the proposed relocation is in·the child's best interest, while factor (2), "the custodial parent's motives in relocating, including a consideration of whether or not he or she is attempting to defeat or to frustrate the noncustodial parent's visitation rights," *id.*, is pertinent to whether the request to relocate is made in good faith. Factor (3), "the noncustodial parent's motives for opposing relocation, including a consideration of the extent to which it is intended to secure financial advantage in continuing child support," *id.*, continues to be a relevant consideration. Section 452.377.7 provides that any parent filing a motion to prevent the relocation must also file an affidavit setting out the factual basis for that parent's objection to the move. The parent's motion and affidavit frame the issues for the hearing and the noncustodial parent's motive in objecting is a relevant issue to the court's assessment of the validity of that parent's objections.

While the first three factors, as they were articulated in cases decided under the prior version of § 452.377, remain important considerations in determining whether to allow relocation, the fourth factor requires modification because of the amendment to § 452.377. The fourth factor provided that the court consider "the realistic opportunity for visitation which can provide an adequate basis for preserving and fostering the noncustodial parent's relationship with the child if the move is permitted." *Id.* at 749. The amended statute requires the court to ensure that visitation following relocation provide much more than merely an adequate basis for preserving and fostering the noncustodial parent's relationship with the child.

Section 452.377.10(1) states that if the court permits the relocation of the child's principal residence, the court "shall order contact with the nonrelocating party including custody or visitation and telephone access sufficient to assure that the child has *frequent, continuing and meaningful contact* with the nonrelocating party unless the child's best interest warrants otherwise." (Emphasis added.) In light of the legislature's greater emphasis on ensuring that the child have frequent, continuing and meaningful contact with the nonrelocating party, the fourth factor should be revised to provide that, in determining whether to allow the proposed relocation, the court consider the realistic opportunity for visitation which can provide frequent, continuing and meaningful contact for the nonrelocating party with the child if the move is permitted.

 To reiterate, pursuant to § 452.377.9, a party seeking to relocate the minor child's principal residence anywhere, including within the state, must prove that the proposed relocation is made in good faith and is in the child's best interest. The following four factors are important to determining the propriety of the relocation: (1) the prospective advantages of the move, including a consideration of whether or not the move will improve the general quality of life for the party seeking to relocate and the child; (2) the motives of the party seeking to relocate, including a consideration of whether or not he or she is attempting to defeat or to frustrate the nonrelocating party's visitation rights; (3) the nonrelocating party's motives for opposing relocation, including a consideration of the extent to which it is intended to secure financial advantage in continuing child support; and (4) the realistic opportunity for visitation which can provide frequent, continuing and meaningful contact for the nonrelocating party with the child if the move is permitted.

Mother argues the court did not follow this standard in determining whether her

proposed relocation of Jared's principal residence from Holts Summit to St. Louis was appropriate. Neither party requested the trial court make findings of fact or conclusions of law. Nevertheless, the trial court made certain gratuitous oral findings of fact and conclusions of law on the record. This court may consider such gratuitous statements in determining whether the trial court erroneously declared or applied the law. *Graves v. Stewart,* 642 S.W.2d 649, 651 (Mo. banc 1982); *Colombo v. Buford,* 935 S.W.2d 690, 693 (Mo.App. 1996); *In the Interest of L.W.F.,* 818 S.W.2d 727, 733 (Mo.App.1991).

During the trial, the trial court made several statements indicating the standard it was applying in determining whether to allow the proposed relocation:

> For [Mother] to be authorized by this Court to move, there's gonna have to be a real reason in her life that mandates the move so as to break down the potential for both of these parents to be involved in the life of this child.

\* \* \*

> There better be a real good reason to talk about depriving this infant of the opportunity to have both of his parents immediately and intimately involved in his day-to-day life. And I'm not gonna permit a move unless there's an extraordinary reason for that breakdown, that opportunity for co-parenting.

At the conclusion of the trial, the court sustained Father's objection to Mother's proposed relocation and stated, among other things, that it found there was "no compelling reason to move 120 miles away."

The trial court's gratuitous statements indicate that the standard which the court applied was not whether Mother proved her proposed relocation of Jared's principal residence was made in good faith and was in Jared's best interest, but rather, whether Mother demonstrated a compelling or extraordinary reason for the proposed relocation. Moreover, there is a further indication that the court did not consider the four factors in determining whether to allow Mother's proposed relocation under § 452.377. The court stated that the ability of Mother's fiancé to obtain employment in Jefferson City was not an issue in the case. Such evidence, however, was relevant to whether the move would improve the general quality of life for Mother and Jared, and was proof of Mother's motives for relocating. If the trial court required Mother to demonstrate a compelling or extraordinary reason for the proposed relocation, and failed to consider the four factors set forth in *Shaw* and other cases, as modified by the amended version of § 452.377, the trial court erroneously declared and applied the law.

When the correct legal standard is applied, there is sufficient competent evidence in the record to support the trial court's decision. We reverse only because the trial court's gratuitous comments at the conclusion of the hearing can be read to suggest that the court applied an incorrect legal standard and, had the proper standard been utilized, a different result could have been reached, although neither result was mandated by the evidence.

The trial court's judgment is, therefore, reversed, and the cause is remanded so that the trial court may consider Mother's proposed relocation of the minor child's principal residence pursuant to the standard articulated in this opinion. The parties indicated on appeal that circumstances have changed since the hearing on Mother's request to relocate.[4] The trial court may desire to hear additional evidence concerning the parties' present circum-

---

4. Since the hearing on the motion to relocate and while the case was pending on appeal, Mother quit her job because her pregnancy required an extended period of bed rest, she gave birth to twins, and she is staying at home in Jefferson City to care for Jared and the twins.

stances before ruling. *See Alt v. Alt,* 896 S.W.2d 519, 523 (Mo.App.1995).

All concur.