# 2002 DTA 116

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL V DE PONCE Y AIBONITO

JULIO A. SOTERO ORTIZ
Apelanté

v.

JOHANNA RIVERA JORGE
Apelada

Núm. KLAN-01-01195

San Juan, Puerto Rico, a 3 de julio de 2002

Panel integrado por su Presidente, el Juez Brau Ramírez,
el Juez Aponte Jiménez y la Jueza Pabón Charneco

Brau Ramírez, Juez Ponente

## I

El apelante, Julio A. Sotero Ortiz, solicita la revisión de una resolución emitida el 30 de octubre de 2001 por el Tribunal de Primera Instancia, Sala de Superior de Ponce, en el procedimiento de relaciones paterno-filiales ventilado ante dicho foro entre el apelante y la apelada, Joanna Rivera Jorge.

Mediante la resolución apelada, el Tribunal de Primera Instancia autorizó a la apelada a trasladarse a residir de forma permanente al estado de Connecticut, llevando consigo a los dos hijos de las partes, ambos menores de edad.

Por entender que el Tribunal de Primera Instancia emitió su resolución sin que hubiera investigado de manera adecuada los cambios propuestos en las relaciones paterno-filiales y sin proveer para que el apelante tuviera contacto con sus hijos, revocamos la determinación recurrida y devolvemos el asunto al Tribunal de Primera Instancia para que proceda a disponer la investigación correspondiente.

## II

Según surge del recurso, el apelante y la apelada mantuvieron una relación consensual por varios años, durante la cual procrearon dos hijos, Miguel y Natasha Sotero Rivera. A la fecha del dictamen apelado, los menores tenían seis y dos años de edad, respectivamente.

En marzo de 2000, la apelada se separó del apelado, yéndose de la residencia donde ambos vivían. La apelada y sus hijos pasaron a vivir en la casa de la madre de la apelada.

Posteriormente, la apelada instó una acción de alimentos contra el apelante ante el Tribunal de Primera Instancia y la Administración para el Sustento de Menores. El 2 de agosto de 2000, el Tribunal emitió una sentencia, por estipulación entre las partes, fijando una pensión alimentaria al apelante y adoptando un plan de relaciones paterno-filiales. El acuerdo de visitas disponía que el apelante se relacionaría con sus hijos todas las semanas, desde el sábado a las 8:30 de la mañana hasta el domingo a las 6:00 de la tarde. El apelante se relacionó con sus hijos de conformidad con este plan.

Posteriormente, la apelada desarrolló una relación sentimental con el señor Juan Isaac Jorge Vélazquez, quien es su primo hermano. La apelada empezó a vivir consensualmente con su primo. Los menores residían también con ellos. La apelada no informó de cambio alguno en sus circunstancias al Tribunal.

El 23 de julio de 2001, el apelante acudió al tribunal mediante una moción de emergencia, presentada bajo el mismo epígrafe del caso de alimentos, donde denunciaba las intenciones de la apelada de trasladarse con los hijos de ambos, y su nuevo compañero, a residir a la ciudad de Nueva York.

En su moción, el apelante alegó que el cambio propuesto interrumpiría las relaciones paterno-filiales que sostenía con sus hijos, y que afectaría la salud y el bienestar emocional de los niños. Solicitó al Tribunal que le prohibiera a la apelada llevarse a los menores de la jurisdicción y que se celebrara una vista para dilucidar el mejor interés de éstos.

El Tribunal emitió la orden solicitada, prohibiendo a la apelada sacar los niños de Puerto Rico y señaló una vista. El Tribunal, sin embargo, no solicitó que se investigara la situación de la apelada ni los cambios propuestos.

Oportunamente, se celebró la vista señalada. Durante la misma, prestaron testimonio las partes.

La apelada declaró que la situación económica de ella y su nuevo compañero era precaria, ya que ambos se encontraban desempleados. Manifestó que la madre de su compañero los había invitado a que se mudaran a Connecticut, donde ella residía. Les dijo que les había conseguido un apartamento para vivir y una oportunidad de trabajo para él. Según la apelada, la madre de su compañero también se había comprometido a ayudarle en el cuidado de los niños y le había comunicado sobre la existencia de una escuela cercana donde podría acudir el hijo que estaba en edad escolar.

La apelada presentó una carta de su suegra sobre el apartamento que le habían conseguido, junto con un recibo del pago de dos meses de renta y una carta de un supuesto patrono anterior de su esposo consensual.

Por su parte, el apelante declaró sobre su objeción al traslado de sus hijos, porque no se había establecido las condiciones de vida que ellos tendrían en los Estados Unidos.

Escuchada la prueba, el Tribunal de Primera Instancia expresó que autorizaría el traslado de los menores, si la apelada, madre custodio de éstos, contraía nupcias con su compañero consensual. Instruyó a dicha parte a presentar el certificado correspondiente.

Más tarde la apelada presentó una moción informativa con la que supuestamente acompañaba copia del certificado de matrimonio requerido. El documento sometido, sin embargo, fue un acta de nacimiento de una hija habida entre la apelada y su nuevo compañero.

El 30 de octubre de 2001, el Tribunal emitió la resolución apelada, autorizando a la apelante a que ella y sus dos hijos se pudieran trasladar a vivir al estado de Connecticut. El Tribunal no dispuso nada sobre las relaciones paterno-filiales entre el apelante y sus hijos, sino que se limitó a ordenarle a la apelada que le comunicara al apelante su dirección física y postal, así como el teléfono del lugar donde residirían los menores.

El apelante presentó una moción de reconsideración, la cual no fue acogida por el Tribunal.

Insatisfecho, el apelante acudió ante este Tribunal.

### III
En su recurso, el apelante plantea que el Tribunal de Primera Instancia erró al autorizar que sus hijos fueran removidos de la jurisdicción sin realizar una evaluación social y sicológica sobre el bienestar de los niños en el nuevo ambiente familiar propuesto por la madre-custodio y sin corroborar la información brindada por la apelada sobre las circunstancias en que la pareja y los menores vivirían.

En nuestro ordenamiento se ha reconocido que toda decisión relacionada a la custodia y a las relaciones entre padres e hijos debe estar guiada por el interés preeminente en la protección y el bienestar de los menores. *Maldonado Mir v. Burris*, 154 D.P.R. ___ (2001), **2001 J.T.S. 72**, a las págs. 1,265-1,266; *Pérez Suárez, Ex parte v. Departamento de la Familia*, 147 D.P.R. ___ (1999), **99 J.T.S. 15**, a la pág. 578; *Sánchez Cruz v. Torres Figueroa*, 123 D.P.R. 418, 431 (1991); *Marrero Reyes v. García Ramírez,* 105 D.P.R. 90, 104 (1976); 31 L.P.R.A. 383 (Supl. 2001); 8 L.P.R.A. sec. 441(t).

Para determinar si una decisión redunda en el mejor interés del menor, deben ponderarse factores como: la preferencia del menor, su sexo, edad, salud mental y física, el cariño que puede brindársele por las partes en controversia; la habilidad de las partes para satisfacer debidamente las necesidades afectivas, morales y económicas del menor; el grado de ajuste del menor al hogar, la escuela y la comunidad en que vive; la interrelación del menor con las partes, sus hermanos y otros miembros de la familia, y la salud psíquica de todas

las partes. *Sánchez Cruz v. Torres Figueroa*, 123 D.P.R. a la pág. 431; *Perron v. Corretjer*, 113 D.P.R. 593, 606 (1982); *Nudelman v. Ferrer Bolívar* 107 D.P.R. 495, 511 (1978); *Marrero Reyes v. García Ramírez*, 105 D.P.R ___, a la pág. 105.

Se ha reconocido que una parte importante del bienestar de los menores es el relacionarse y mantener contacto con sus padres. *Pérez Suárez, Ex parte v. Departamento de la Familia*, **99 J.T.S. 15**, a la pág. 578; *Hidalgo v. Depto. Servicios Sociales*, 129 D.P.R. 606, 619 (1991); *Sterzinger v. Ramírez*, 116 D.P.R. 762, 776 (1985).

Por otro lado, el Tribunal Supremo de Puerto Rico ha caracterizado el derecho de los padres a relacionarse con sus hijos como uno de naturaleza personal y familiar de contenido afectivo, cuya finalidad no es otra que la de favorecer y facilitar las más amplias relaciones humanas entre familiares. *Sterzinger v. Ramírez*, 116 D.P.R. a la pág. 776; véase, también, *Picó v. Mejía*, 52 D.P.R. 728, 731 (1938).

Este derecho no sólo existe para el beneficio del padre titular, sino que persigue el beneficio del menor, ya que las relaciones paterno-filiales adecuadamente reguladas fortalecen los vínculos afectivos que aseguran los cimientos del compromiso que debe tener un padre de asistir a sus hijos en su desarrollo. *Sterzinger v. Ramírez*, 116 D.P.R. ___, a las págs. 776-777.

Las relaciones pueden ser reguladas por los tribunales, pero no pueden ser prohibidas o eliminadas, en ausencia de circunstancias excepcionales y siempre atendiendo el mejor bienestar de los menores. *Pérez Suárez, Ex parte v. Departamento de la Familia*, **99 J.T.S. 15**, a la pág. 578; *Hidalgo v. Depto. Servicios Sociales*, 129 D.P.R. ___, a la pág. 619; *Sterzinger v. Ramírez*, 116 D.P.R. ___, a la pág. 775.

El Tribunal Supremo de los Estados Unidos ha reconocido que existe un interés fundamental en relacionarse con los hijos o familiares de una persona. Véase, *Troxel v. Granville*, 530 U.S. ___ (2000), 68 U.S. L.W. 4458, a la pág. 4460.

En los Estados Unidos, numerosas jurisdicciones han considerado el problema de si el padre o madre custodio puede relocalizarse a otro estado con el menor.

Al hacer esta determinación se han tenido en cuenta los siguientes factores:

-El efecto que tendría el traslado sobre el aspecto emocional, físico y educativo del menor;

-La naturaleza, extensión y el envolvimiento del menor con ambos padres, hermanos y otros parientes significativos;

-La oportunidad real que tendría el padre que se opone a la relocalización del menor y éste para mantener la relación paterno-filial considerando factores tales como: las circunstancias económicas;

-Si la relocalización responde al mejoramiento de la calidad de vida del menor;

-La relación del menor con la comunidad en que vive y su familia extendida;

-Las posibilidades de adaptarse a la nueva comunidad y el impacto emocional que ello cusaría en el menor;

-Cualquier otro factor que afecte los intereses del menor.

*Evans v. Evans*, 530 S.E. 2d 576, 580 (N.C. App., 2000); *Stout v. Stout*, 560 N.W. 2d 903, 908-909 (N.D.,

1997).

En este tipo de casos, el peso de la prueba necesaria para autorizar un traslado de un menor recae sobre el padre o la madre que interesa la relocalización del menor. Dicho padre o madre deberá probar, entre otros extremos, que el traslado es necesario, que no tendrá efectos detrimentales para el menor en su relación con su otro padre o madre y que el mismo es en el mejor interés del menor. *In re: Marriage of Roe*, 23 Cal. Rptr. 2d 295, 299 (Cal. App. 2 Dist., 1993).

Por último, el derecho constitucional que tiene la madre para viajar y trasladarse de un lugar a otro no se ve afectado por una prohibición del Tribunal a la relocalización del menor. Tampoco se ven afectados los derechos de la madre a tomar decisiones respecto a su nuevo matrimonio o sobre su vida familiar. *Carter v. Schilb*, 877 S.W. 2d 665, 668 (Mo. App. W.D., 1994).

En el presente caso, el Tribunal de Primera Instancia autorizó el traslado de la apelada, como madre-custodia, y sus hijos al estado de Connecticut, a pesar de la oposición del apelante, quien es el padre de los niños. Este traslado conllevaba mover a los menores a un ambiente totalmente distinto al que los niños habían vivido de forma habitual. También implicaba la discontinuidad de las relaciones directas entre el apelante y sus hijos.

Al tomar esta determinación, el Tribunal no tuvo ante sí informe alguno de trabajo social, que le permitiera conocer la situación de los menores y verificar la información ofrecida por la parte apelada. Tomamos conocimiento judicial, sin embargo, que este tipo de recurso está disponible en los centros judiciales de nuestro país. Cf., *Colón v. Meléndez*, 87 D.P.R. 442, 446 (1963).

El Tribunal descansó más bien en la declaración de la apelada y en los documentos sometidos por ésta. Hemos examinado esta prueba y entendemos que la información ofrecida al Tribunal no era suficiente para tomar una determinación adecuada sobre la solicitud.

El Tribunal de Primera Instancia, en este sentido, parece haber convenido al traslado de los menores sólo porque la apelada gozaba de una precaria situación económica en Puerto Rico. El Tribunal demostró una inquietante despreocupación sobre los detalles específicos que el cambio podía implicar en la vivienda, alimentación, cuido, educación, etc. de los menores en los Estados Unidos, cuando, precisamente, la situación económica de la apelada sugería que la mudanza podía serles detrimental.

El Tribunal no investigó, por ejemplo, si Miguel podría recibir educación gratuita en Connecticut, si la escuela le proveería alimentación, si tenía transportación, si existía algún programa bilingue que le facilitara su ajuste, etc., etc. y, sobre todo, si estos arreglos se habían hecho, previo a autorizar el traslado de dicho niño a los Estados Unidos. El récord está huérfano de información sobre los arreglos para el recibo de otros servicios gubernamentales por los menores en su nueva residencia. El Tribunal no parece haber hecho esfuerzo alguno para investigar la situación de la madre y del compañero consensual de la apelada y confirmar su disponibilidad para el cuido de los niños.

La única condición impuesta por el foro de Primera Instancia a la parte apelada, para autorizar el traslado a los Estados Unidos, fue que legalizara su relación con su compañero consensual. Esta condición, de suyo, no parece relacionada con el bienestar de los niños. No obstante, la sala recurrida ni siquiera tomó las medidas para verificar si efectivamente se había cumplido con su directriz.

Somos de la opinión que nuestro ordenamiento requiere una actitud de fiscalización más activa de parte de los jueces del Tribunal de Primera Instancia, en el descargo de su responsabilidad de velar por el bienestar de los menores que se hallan ante su jurisdicción, que la demostrada por la distinguida Sala recurrida en el caso de

autos. Más aún cuando la ausencia de determinaciones de hechos en la resolución reurrida nos priva de examinar y evaluar las circunstancias consideradas por el Tribunal para autorizar el traslado impugnado.

Procede revocar la determinación apelada y devolver el caso para que el tribunal haga una evaluación adecuada sobre el impacto emocional y social del traslado en los menores. Para esto deberá ordenarse la preparación de un informe por una trabajadora social, donde se considere el bienestar y el interés de los menores. Este debe ser seguido de una vista donde las partes tengan la oportunidad de presentar su evidencia sobre el asunto y reaccionar al informe ordenado.

Además, el Tribunal tiene la obligación de disponer las relaciones paterno-filiales entre los hijos con el padre no-custodio.

Por los fundamentos expresados, se revoca la resolución apelada. Se ordena al Tribunal de Primera Instancia que, a la brevedad posible, proceda a celebrar una vista a fin de fijar un plan de relaciones paterno-filiales en el caso de autos. De forma simultánea, referirá a la oficina de la Trabajadora Social de Relaciones de Familia el caso de autos a fin de que se realice un estudio social interagencial de las condiciones de los menores en Connecticut y las circunstancias en que residen, entre otras. Una vez tenga el resultado del estudio social, el Tribunal de Primera Instancia deberá celebrar una vista donde tome una determinación sobre el traslado de los menores teniendo como norte su bienestar.

Dicha vista deberá celebrase dentro del término de sesenta (60) días. El término concedido podrá ser prorrogado, por justa causa, previa solicitud ante el Tribunal de Primera Instancial, con notificación a este foro.

Notifíquese por telefax, además de por la vía ordinaria.

Lo pronunció y manda el Tribunal y lo certifica la señora Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General