**Sandra Jo BOLING, Appellant,**

v.

**Bradford Everett DIXON, Respondent.**

**No. WD 58071.**

Missouri Court of Appeals,
Western District.

Oct. 17, 2000.

Leslie Mayberry Schneider, Columbia, for Appellant.

Douglas Fowler Pugh, Columbia, for Respondent.

RONALD R. HOLLIGER, Presiding Judge.

Sandra Dixon, n/k/a Sandra Boling, appeals the decision of the Boone County Circuit Court denying her the right to relocate to Soldotna, Alaska, with her child Katlyn.

Only a brief presentation of the facts is necessary. Sandra and Bradford Dixon divorced on July 25, 1996. During their marriage, the couple had one child, Katlyn June Dixon. Brad and Sandra share joint legal custody of Katlyn. Sandra has primary physical custody of their child and Brad has visitation every other weekend. On May 5, 1999, Sandra remarried and now lives with her new husband, Todd Boling, and Katlyn in St. Louis, Missouri. Brad remains in Columbia, Missouri.

Todd recently finished his medical residency and accepted a job as a surgeon in Soldotna, Alaska, a town located in the south central portion of Alaska. Todd's new job offered him an option to become a full partner in the medical practice with a salary ranging from $80,000 $100,000. When Sandra and Todd decided to move to Alaska, Sandra gave Brad a written proposal for a new visitation agreement. The new agreement proposed to allow Brad visitation with Katlyn during her entire summer vacations from school, with the exception of one week, all of Katlyn's Christmas breaks from school for two consecutive years, and all of her spring breaks from school. The proposed agreement gave Brad approximately 90 days each year of visitation, whereas the existing agreement provided Brad approximately 70 days with Katlyn per year. Sandra also proposed to pay for Katlyn's traveling expenses.

Brad filed an objection to the proposed relocation to prevent Sandra from relocating with Katlyn. On July 21, 1999, the trial court found that the relocation was not in Katlyn's best interests and declined to permit it.

In her sole point on appeal, Sandra contends the trial court erred in refusing to grant the proposed relocation because her marriage presented a substantial change in circumstances that required the relocation of Katlyn with her mother and her stepfather to Alaska in order to serve the child's best interests. Sandra alleges the trial court misapplied the four-factor test under *Shaw v. Shaw*, 951 S.W.2d 746 (Mo.App. 1997), and that the trial court's decision was against the weight of the evidence. We disagree.

The appellate court will affirm the trial court's decision unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The reviewing court should set aside the judgment only if it has a firm belief that the judgment is wrong. *Id.* Reviewing courts should assume that the trial court was motivated by the best interests of the child in making its decision and affirm the trial court's ruling, unless it is convinced the best interests of the child require some other disposition. *Buschardt v. Jones*, 998 S.W.2d 791, 796 (Mo.App. 1999). Such a case must be decided on its particular facts, with the welfare of the child remaining the primary concern. *Kelling v. Kelling*, 18 S.W.3d 525 (Mo.App. W.D.2000). *Buschardt*, 998 S.W.2d at 796.

Section 452.377.9 states: "the party seeking to relocate shall have the burden of proving that the proposed relocations is made in good faith and is in the best interest of the child." The four factors which a court must consider in determining whether to allow a custodial parent to relocate with a child are: 1) whether or not the move will improve the general quality of life for the custodial parent and child; 2) the custodial parent's motives in relocating, including a consideration of whether or not he or she is attempting to defeat or to frustrate the noncustodial parent's visitation rights; 3) the noncustodial parent's motivations for opposing the relocation, including a consideration of the extent to which it is intended to secure financial advantage in continuing child support; and 4) the realistic opportunity for visitation which can provide an adequate basis for preserving and fostering the noncustodial parent's relationship with the child if the move is permitted. *Shaw v. Shaw*, 951 S.W.2d at 748–49. In reviewing these four factors, the trial court focused on the fourth factor and found that the proposed relocation of Katlyn to Alaska would significantly alter her relationship with her father and would make frequent visitation between father and daughter impossible. Further, the court found that the advantages accompanying the proposed relocation did not outweigh the disadvantages. The court also noted that Sandra's husband made no attempt to find employment

in Missouri before accepting the job in Alaska.

Sandra argues that her proposed visitation agreement provides Brad with approximately 20 more days of visitation each year, thereby satisfying the fourth factor of *Shaw*. Though Sandra's argument may have once been persuasive, it no longer is. In July of this year, our court modified the fourth factor of the *Shaw* test after reviewing 1998 amendments to RSMo 452.377.10(1). The court in *Sadler v. Favro*, 23 S.W.3d 253 (Mo.App.W.D. 2000) held that the fourth factor of the Shaw test should now read "the realistic opportunity for visitation which can provide frequent, continuing and meaningful contact for the non-relocating party." *Id.* Sandra's proposed relocation to Alaska contravenes the revised fourth factor. Though Sandra's proposed revision to the visitation agreement grants Brad approximately 20 more days per year with Katlyn, the relocation would still deprive Brad of frequent, continuing and meaningful contact with Katlyn. Brad testified at trial that at no time throughout Katlyn's life has he been away from her for more than fourteen days. While the language "frequent, continuing and meaningful contact" in the statute could include telephone calls or other communication and is not limited to physical contact, the trial court was in the better position than this court to determine what contact was required under the fourth factor of the test.

The trial court's decision is not against the weight of the evidence, nor did it erroneously declare or apply the law. The decision is affirmed.

PATRICIA BRECKENRIDGE, Judge, and JAMES M. SMART, Jr., Judge, concur.