Stephanie K. SPIRE (formerly Adwell), Respondent,

v.

Bradley J. ADWELL, Appellant.

No. WD 58118.

Missouri Court of Appeals, Western District.

Dec. 19, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 30, 2001.

Janet W. Larison, Grant City, for appellant.

Roger M. Prokes, Maryville, for respondent.

Before EDWIN H. SMITH, Presiding Judge, ULRICH and ELLIS, Judges.

ELLIS, Judge.

Bradley Adwell ("Father") appeals from a judgment entered in the Circuit Court of Nodaway County modifying the original dissolution order between himself and his ex-wife Stephanie Spire ("Mother"). After finding that a substantial and continued change of circumstances had arisen due to Mother's plans to move the children to Blue Springs, Missouri, the Court allowed Mother to retain primary physical custody of the children and modified the original dissolution decree by granting Father additional visitation. Father challenges the Court's determination that Mother should retain primary physical custody.

On November 4, 1996, the Circuit Court of Nodaway County, Missouri entered an order dissolving the marriage of Father and Mother. The Court adopted the "Marital Settlement and Separation Agreement" entered into by the parties. The Court awarded Father and Mother joint legal custody of the couple's two children, Bryce and Brittney. The Court designated Mother as the primary physical custodian of the children subject to the visitation periods granted to Father including alternating weekends and alternating holidays.

On October 1, 1999, Father filed a "Motion to Modify" the dissolution order to grant him primary physical custody of the minor children. In relevant part, Father stated that a change in the circumstances of the children had occurred because Mother was planning to relocate the minor children's residence and had not provided Father with notice pursuant to § 452.377. Also on October 1, 1999, Father filed a "Motion for Temporary Custody and Restraining Order" to prevent Mother from moving the minor children away from Nodaway County, Missouri. Father's motions were served upon Mother on October 7, 1999.

Prior to being served with Father's motion, on October 6, 1999, Mother had the Nodaway County Sheriff's Office serve Father with her "Notification of Relocation of Children." That document stated that Mother intended to move to the Kansas City area with Bryce and Brittney in sixty days because Mother's husband had obtained employment in Kansas City. Mother attached a proposed parenting plan that would provide Father with additional visitation, including half of the children's summer vacation and full holiday weekends. On October 18, 1999, Mother filed her answer to Father's Motion to Modify.

The Circuit Court conducted a hearing on the motion to modify on November 24, 1999. On December 6, 1999, the Court entered its judgment modifying the original dissolution order. The Court found that a substantial and continued change of circumstances had arisen due to Mother's plans to move the children to Blue Springs, Missouri. The Court found that this move would alter the time periods during which the children would be accessible to Father. The court found that the Mother had duly served Father with notification of that move pursuant to Section 452.377. The Court allowed Mother to retain primary physical custody of the children and modified the original dissolution

decree by adopting the provisions of Mother's parenting plan which granted Father additional visitation.

On December 27, 1999, Father filed a "Motion to Set Aside Judgment, For New Trial Or, In The Alternative, to Amend Judgment." On January 3, 2000, the court heard argument on Father's motion and denied the same.

■ Father brings two points on appeal. In his first point, Father claims that the trial court erred in failing to grant him primary physical custody of the children because Mother's proposed move to Blue Springs was a change in circumstances that was not in the best interests of the children.

■ "In matters pertaining to custody rights, this court gives deference to the trial court's assessment of what serves the best interests of the child and that judgment will not be disturbed on appeal unless the judgment is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law." *Thomas v. Thomas*, 989 S.W.2d 629, 633 (Mo.App. W.D.1999). We afford the trial court greater discretion in determining child custody issues than in other matters. *Hicks v. Hicks*, 969 S.W.2d 840, 843 (Mo. App. W.D.1998). " '[B]ecause of the trial court's unique position for determining the credibility, sincerity, character and other intangibles of the witnesses, we presume the awards of custody are made in the best interests of the children.' " *Flathers v. Flathers*, 948 S.W.2d 463, 471 (Mo.App. W.D.1997) (quoting *Gismegian v. Gismegian*, 849 S.W.2d 201, 202 (Mo.App. E.D. 1993)). "This court will not disturb the trial court's determination of custody unless it is manifestly erroneous and the welfare of the children demands a different result." *Hicks*, 969 S.W.2d at 843.

■ "Under § 452.410.1, a court may not modify a prior custody decree unless it finds, on the basis of facts which have arisen subsequent to the dissolution decree, that (1) a change has occurred in the circumstances of the child or his custodian and (2) a modification of custody is in the best interests of the child." *Mobley v. Phillips*, 942 S.W.2d 399, 400–401 (Mo. App. W.D.1997). "The party awarded custody in the original dissolution decree is presumed to be a suitable custodial parent, and the party seeking to change the custody arrangement bears the burden of proving a change in circumstances of the child or the custodial parent and that modification is necessary to serve the best interests of the child." *Id.* at 401.

Both parties agree that Mother's impending move constituted a substantial and continuing change in the circumstances. Mother's husband had obtained his college degree and found more lucrative employment in the Kansas City area than would have been available in Maryville. Mother and her husband had purchased a home in Blue Springs to be closer to her husband's place of employment. Remarriage and a new spouse's acceptance of employment in a distant city have been recognized as the type of substantial and continuing change in circumstances required to support the modification of custody or visitation if a change is shown to be in the best interests of the children. *Maher v. Maher*, 951 S.W.2d 669, 672 (Mo. App. E.D.1997).

■ Accordingly, we must determine whether the trial court erred in determining that the best interests of the children did not require a change in custody. In this case, the evidence presented at trial makes it abundantly clear that the trial court could not have made a reversible decision regarding custody. "If we believe, as we do here, that an award to respondent or appellants is supported by the record as being in the best interest of the children, then we cannot convict the trial court of error in its award of custody to respondent." *Flathers*, 948 S.W.2d at 471. All of the witnesses for both parties and even the parties themselves acknowl-

edged that Mother and Father were both good parents who cared about the best interests of their children. Father took full advantage of his visitation rights, and Mother and Father worked out an additional arrangement where Father would also see the children on Tuesday and Thursday evenings. Both parents appear to have had good motives in attempting to obtain custody, and both desired that the other parent should have substantial and meaningful contact with the other parent. The trial court was left to choose between two capable parents.

The trial court determined that Mother should retain custody of the children, and we cannot find any error in that determination. As previously noted, there is a presumption that the party that was granted custody under the original divorce decree remains a suitable parent. *Welch v. Welch*, 12 S.W.3d 712, 713 (Mo.App. S.D. 1999). Accordingly, the trial court had to begin from the presumption that Mother remained a suitable parent.

The evidence presented to the Circuit Court established that Father and his current wife had work hours that would require them to have someone else look after the children on a fairly regular basis if custody were changed to Father. On the other hand, the testimony reflected that Mother intended to run a day care service out of her new home in Blue Springs and would be home with the children when they were not in school. Furthermore, Mother presented evidence regarding the quality of the new school district the children would be attending as well as pictures of the home they had purchased. The trial court's decision that it was in the best interests of the children to allow Mother to retain custody was supported by substantial and competent evidence and was not against the overwhelming weight of the evidence. Point denied.

■ In his second point, Father claims the trial court erred in allowing the

minor children's residence to be relocated. Pursuant to § 452.377.9, a party seeking to relocate a minor child's principal residence, even if the move being contemplated is within the state of Missouri, must prove that the proposed relocation is made in good faith and is in the child's best interest. *Sadler v. Favro*, 23 S.W.3d 253, 258 (Mo.App. W.D.2000). The following four factors should be considered in determining the propriety of relocation:

the prospective advantages of the move, including a consideration of whether or not the move will improve the general quality of life for the party seeking to relocate and the child;

the motives of the party seeking to relocate, including a consideration of whether or not he or she is attempting to defeat or to frustrate the nonrelocating party's visitation rights;

the nonrelocating party's motives for opposing relocation, including a consideration of the extent to which it is intended to secure financial advantage in continuing child support; and

the realistic opportunity for visitation which can provide frequent, continuing and meaningful contact for the nonrelocating party with the child if the move is permitted.

*Id.*

■ With regard to the first factor, Mother presented evidence that the move to Blue Springs would allow her husband to accept a better job and would increase the family income. Mother presented evidence that the children would be living in a nice house near good schools. Furthermore, Mother indicated that she would be operating a day care operation out of her home in Blue Springs and, therefore, would be at home for her own children when they were not in school. The trial court could certainly have found that the move to Blue Springs could improve the general quality of life of Mother and the children.[1]

---

1. "A good environment and stable home are primary considerations in determining a

With regard to the second and third factors, nothing appears to indicate an improper motive behind the efforts of either Father or Mother. Father does not appear to question Mother's motives in attempting to move, and the record does not contain any indication that Mother had any other motives in moving aside from improving the general quality of the life for her family. With regard to Father's motives, Mother expressly states in her appellate brief that she does not allege that Father had any bad or improper motive in challenging her move.

 Finally, the record does not reflect that moving the children to Blue Springs would prevent Father from enjoying frequent, continuing, and meaningful visitation with the children. Under the proposed parenting plan that was adopted by the trial court, Father is granted substantially more visitation than he was provided under the original dissolution order. While Mother's move to Blue Springs will prohibit Father from continuing his unofficial weekly contacts with the children, the new visitation schedule adopted by the court certainly provides the realistic opportunity for visitation which can provide frequent, continuing and meaningful contact between Father and the children. The parenting plan adopted by the court even provides that Mother will bear the burden of half of the children's transportation under the visitation schedule. While we sympathize with Father's desire to see his children on a more frequent basis, " '[i]n our highly mobile society, inflexibly confining a custodial parent to a fixed geographic area simply to be proximate to the non-custodial parent is unrealistic, if removal to another area for reasons such as change of employment does not significantly interfere with the non-custodial parent's participation in the joint legal custody and is not inconsistent with the best interests of the child." *McCubbin v. Taylor*, 5 S.W.3d 202, 209 (Mo.App. W.D.1999).

We find no error in the trial court's decision to allow Mother to move the children to Blue Springs. Having examined the various relevant factors, we find that the evidence more than sufficiently supports the trial court's determination that the move was being made in good faith and would be in the best interests of the children. Point denied.

The judgment of the trial court is affirmed.

All concur.

child's best interests." *Shaw v. Shaw*, 951 S.W.2d 746, 748 (Mo.App. W.D.1997).