**David L. SEAMAN, Appellant,**

v.

**Rowena D. SEAMAN, Respondent.**

**No. WD 58227.**

Missouri Court of Appeals, Western District.

Feb. 13, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 27, 2001.

Application to Transfer Denied April 24, 2001.

---

Susan Long, Liberty, for appellant.

Mary Drape, Kansas City, for respondent.

Before HOLLIGER, P.J.,
LOWENSTEIN and NEWTON, JJ.

HAROLD L. LOWENSTEIN, Judge.

David Seaman (Father) and Rowena Seaman (Mother) married May 27, 1987, in Smithville, Mo. They have two daughters, Brittany Nicholle, born February 10, 1990, and Katherine Elizabeth (Katie), born May

29, 1992. Father and Mother have resided in Edgerton, Mo., with their children since 1992. In this dissolution of marriage action, the parents were awarded joint physical and joint legal custody. However, Mother was permitted to remove the children to Omaha, Neb., and the court awarded Father liberal visitation rights.

Father contests two of the trial court's rulings. He argues first that the court erred in ruling that children shall reside with Mother and second that the court erred in permitting Mother to remove the children from Missouri. Further facts are set forth below as they relate to each point on appeal.

## Standard of Review

The trial court's judgment will be affirmed unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). An appellate court presumes that the best interests of the child motivate the trial court. *Buschardt v. Jones,* 998 S.W.2d 791, 796 (Mo.App.1999) (citation omitted). As such, "the trial court's assessment of what serves the child's best interests will be affirmed unless the appellate court is firmly convinced that the child's welfare requires some other disposition." *Id.; Boling v. Dixon,* 29 S.W.3d 385, 387 (Mo.App.2000). Where there is contradictory evidence, an appellate court defers to the trial court's credibility determinations. *Buschardt,* 998 S.W.2d at 796. "Moreover, because of the trial court's unique position for determining the credibility, sincerity, character, and other intangibles of the witnesses, we presume awards of custody are made in the best interests of the children." *Flathers v.*

*Flathers,* 948 S.W.2d 463, 471 (Mo.App. 1997) (citation omitted).

## Analysis

### I.

Father argues in his first point is that the trial court erred in finding that the children shall reside with Mother because there was no substantial evidence to support the award. Custody is determined by considering the best interest of the child and the following factors set out in § 452.375.2, RSMo.1998:[1]

(1) The wishes of the child's parents as to custody and the proposed parenting plan submitted by both parties;

(2) The needs of the child for a frequent, continuing and meaningful relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;

(3) The interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect the child's best interests;

(4) Which parent is more likely to allow the child frequent, continuing and meaningful contact with the other parent;

(5) The child's adjustment to the child's home, school, and community;

(6) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved. If the court finds that a pattern of domestic violence has occurred, and, if the court also finds that awarding custody to the abusive parent is in the best interest of the child, then the court shall enter written findings of fact and conclusions of law. Custody and visitation rights shall be ordered in a manner that best protects the child and the parent or

---

1. All further statutory references are to RSMo.1998 unless otherwise indicated.

other family or household member who is the victim of domestic violence from any further harm;

(7) The intention of either parent to relocate the principal residence of the child; and

(8) The wishes of a child as to the child's custodian.

In this case, the trial court found: factors one, two, five and six were applicable to both parents; factors three and four weighed in favor of Mother; factor seven weighed in favor of Father.[2] In arguing that there was not substantial evidence to support the trial court's ruling, Father contests the trial court's determination of factors three, four, five and six. Each of these factors is considered below.

■ Factor three requires the trial court to consider the relationships of the children with those who may affect their best interests. § 452.375.2(3). Father argues that factor three weighs more heavily in his favor because he took the girls to ride their horses and was involved in 4–H (and that the children will not be able to take their horses to Omaha), because he took the children to birthday parties, because of testimony that he was a patient parent while Mother was often impatient and used profanity around the children, and because of the children's frequent interaction with cousins, aunts and uncles in Edgerton.

There was also evidence, however, that Mother helped the children with their homework, took them to the doctor, and attended field trips, Brownies and church with the girls. Mother also testified that she was the primary caregiver. In Omaha, the girls will live with their grandparents, and several of their aunts, uncles and cousins live nearby. As such, under the standard of review, there was substantial evidence to support the trial court's finding regarding the children's relationships with their parents and others who may affect them.

■ The fourth factor that the trial court must consider is which parent is more likely to allow the children frequent, continuing and meaningful contact with the other parent. § 452.375.2(4). Both parents testified about problems with the other parent in spending time with the children. Father cited an incident where Mother kept the children a day longer than she anticipated without providing him proper notice. Mother stated at trial that Father at times denied her contact with the girls. This court defers to the trial court's determination of credibility issues. *Buschardt*, 998 S.W.2d at 796. Thus, although there was conflicting testimony, there was substantial evidence to support the trial court's finding that Mother would be the parent more likely to allow her former spouse more contact with the children.

■ Factor five concerns the children's adjustment to their home, school, and community. § 452.375.2(5). Father argues that the trial court erred in finding that this factor did not weigh in favor of either parent because the children would continue to reside in the same home as they had since 1992 if he were awarded primary

---

2. Specifically, the trial court's findings were as follows:

"Pursuant to Section 452.375, the Court has considered the best interest of the children and specifically has considered: both parents' wishes and parenting plans; both parents are willing to see the needs of the children to insure frequent and continuing relationship with both parents is met [sic]; both parents have the ability and willingness to actively perform as mom and dad for the needs of the children; both parents have the children's adjustment to home, school and community at heart; there is no history of abuse or physical or mental problems in the family."

physical custody. He argues that they were doing well in school, have many friends there, and participate in Brownies. Both of Mother's parents have been substitute teachers in Omaha, and Mother's mother testified that the faculty in the girls' future school district are congenial and "very good." Also, Mother's parents testified that their other three children and their grandchildren all reside within ten minutes of their home, where Mother and the girls would live. Further, there was extensive testimony and evidence that the home in Edgerton is dilapidated (leaky roof, rotting porch, wild animals entering the home, poor air conditioning) and that the grandparents' home in Omaha is updated and more spacious. Again, under the standard of review, the trial court's finding as to the fifth factor was supported by substantial evidence.

▮▮ Finally, Father argues that the trial court erred in finding that the sixth factor, concerning the mental and physical health of all individuals involved, did not weigh heavily in favor of either parent. § 452.375.2(6). In so arguing, Father cited an incident where Social Services investigated a complaint involving a spanking Mother gave to Katie. However, the trial court found that there was no history of abuse or physical or mental problems in the family,[3] and the record supports that finding. There was no indication that any action resulted from the investigation by Social Services; there was no report on file from the investigating agency; there was no testimony, even from Father, that Mother abused the children. Moreover, § 452.375(6) speaks of a "pattern of domestic violence." To show a pattern, the court must find that incidents during a marriage are representative of typical behavior. *Hamilton v. Hamilton*, 886 S.W.2d 711, 715 (Mo.App.1994) (two inci-

dents of spousal abuse during twenty-year marriage did not constitute a "pattern of domestic violence" requiring trial court to enter written findings of fact and conclusions of law in award of joint custody). In the instant case, there was not evidence even of one incident of abuse, let alone a pattern. As such, the trial court's ruling was supported by substantial evidence. This point is denied.

## II.

Father next argues that the trial court erred in permitting Mother to remove the children from Missouri because it did not consider the four requisite factors for relocation.

▮ Under § 452.377.9, "[t]he party seeking to relocate shall have the burden of proving that the proposed relocation is made in good faith and is in the best interest of the child." The four factors that a court must consider in determining whether to allow a custodial parent to relocate with children are: 1) whether the move will improve the general quality of life for the relocating parent and children; 2) the relocating parent's motives in relocating, including a consideration of whether she is attempting to defeat or to frustrate the non-relocating parent's visitation rights; 3) the non-relocating parent's motivations for opposing the relocation, including a consideration of the extent to which it is intended to secure financial advantage in continuing child support; and (4) the realistic opportunity for visitation which can provide frequent, continuing and meaningful contact for the non-relocating party with the child if the move is permitted. *Sadler v. Favro*, 23 S.W.3d 253, 258 (Mo.App.2000); *Boling*, 29 S.W.3d at 387.

3. *Id.*

In deciding that Mother may relocate the children, the trial court noted only that the move is in the best interests of the children, citing that the children's interaction and interrelationship with Mother's parents, siblings, and others "strongly affect" the children's best interests. This notation appears to address the first factor, but the court did not expressly make findings on the other factors. "[W]here the court is silent as to which factors it considered, the trial court is presumed to have considered all the evidence and made its award in the best interests of the children based on consideration of the relevant... factors, unless the record indicates otherwise." *Weaver v. Kelling*, 18 S.W.3d 525, 528 (Mo.App.2000). In the instant case, much of the analysis is the same for the relocation as it was for the custody arrangements.

Factor one requires the court to consider whether the relocation will improve the general quality of life for the relocating parent and children. Father argues that the ruling was against the weight of the evidence primarily because Mother has not yet secured employment in Omaha and because the horses and pets will stay in Missouri. Mother will be staying with her parents, however, and testified that she was waiting until the trial court's ruling to make a concerted effort at securing employment in Omaha. Both parties presented evidence that the children would be living near many relatives and would attend quality schools. As noted above, the quality of the living conditions with Father was called into question, and Mother presented evidence that the living conditions at the maternal grandparents' home would be much improved. "A good environment and stable home are primary considerations in determining a child's best interests." *Spire v. Adwell*, 36 S.W.3d 28, 32 n. 1 (Mo.App.2000) (citation omitted). Ample evidence was presented to the trial court to support the conclusion that the relocation would improve the general quality of life for the children.

Factor two requires the court to consider Mother's motives in relocating, including whether she is attempting to defeat or to frustrate Father's visitation rights. Mother testified that her motive was to "have a better chance of getting a job and providing a good place for my children to live." Father alleges that Mother's decision to move "was an attempt to disrupt and damage the relationship between [Father] and his daughters." Father, however, offers no evidence to support that allegation other than arguing that Edgerton is a better living environment than Omaha, in part because Mother has not secured employment yet. His arguments pertain to the first factor, regarding the children's general quality of life, and do not demonstrate that Mother's motive to relocate is to defeat Father's interaction with the children. Thus, this factor weighs evenly in favor of both parents, and again, Father has not demonstrated that the trial court's conclusion was against the weight of the evidence.

The third factor involves determining Father's motivations for opposing the relocation, including a consideration of the extent to which it is intended to secure financial advantage in continuing child support. There appears to be no allegation that Father opposed the relocation for improper motives; in fact, Father's primary reason for opposing the relocation seems to be to maintain the status quo for his children. However, again, there is no indication that the trial court did not consider Father's motivations, and its conclusion was not against the weight of the evidence.

The final factor that courts consider in relocation cases is the realistic opportunity for visitation. This prong was altered last

year because of the legislature's decision to place greater emphasis on ensuring that children have frequent, continuing and meaningful contact with the non-relocating parent. *Sadler*, 23 S.W.3d at 258. Father argues that the driving distance to the halfway point between Omaha and Edgerton interferes with the meaningful contact he will have with his children.

■■■■ The cost of travel, the arrangements needed for minors to travel, and the time involved are all relevant in considering the fourth factor. *Newell v. Rammage*, 7 S.W.3d 517, 523 (Mo.App.1999) (citation omitted). Any distance would undoubtedly hinder a parent-child relationship to some extent. However, though the General Assembly has indicated its intent that courts engage in greater scrutiny to ensure that a meaningful parent-child relationship continue, courts may still allow relocation under appropriate circumstances. "Even where removal will make visitation more difficult, a trial court may properly permit removal of the children when it is in their best interests." *Thomas v. Thomas*, 989 S.W.2d 629, 634–35 (Mo.App.1999).

■■■ In the instant case, the trial court provided that Mother bear the burden of half of the children's transportation under the visitation schedule: each parent must drive to the halfway point between Edgerton and Omaha, which is approximately eighty miles from each home. *See Spire*, 36 S.W.3d at 32 (fourth factor met in part because relocating parent bore half of the burden of transportation). In addition, the trial court provided Father with a detailed visitation schedule awarding him substantial parenting time.[4] *Cf. Edmison ex rel. Edmison v. Clarke*, 988 S.W.2d 604, 610

(Mo.App.1999)(record did not show adequate assurance that Father would have a meaningful relationship with child because trial court did not provide a detailed visitation schedule). Further, the trial court lessened Father's monthly child support payments by $100 in order to offset his travel expenses. Finally, "frequent, continuing and meaningful contact" can include telephone calls or other communication and is not limited to physical contact. *Boling*, 29 S.W.3d at 388. The trial court clearly was in a better position than this court to determine whether the requisite contact required under the fourth factor was satisfied, and its decision is not against the weight of the evidence. *See id.*

Under the four-factor test for relocation and under § 452.3773.9, this court finds no error in the decision to allow Mother to relocate. This point is denied.

In conclusion, the record shows that both Mother and Father are interested, nurturing parents who, together, have fostered well-rounded children. Mother has been the primary caretaker, helping the children with homework; Father has promoted the children's interest in horses, teaching them to ride and attending their 4–H meetings. The trial court was faced with a set of facts that yielded no easy result as to where the children should reside. Nevertheless, as noted above, the standard of review weighs heavily in favor of the trial court's determination as to the best interests of the children. Affirmed.

All concur.

---

4. The trial court provided that the children be with Father fifty percent of all days out of school for any period in which the children are out of school seven days or more; every other weekend; six weeks of every summer (with Mother then to have visitation rights every other weekend); and pursuant to a detailed schedule regarding holidays and birthdays.