**Ricki Dee DEFREECE, Respondent,**

v.

**Shawn Eric DEFREECE, Appellant.**

**No. WD 59706.**

Missouri Court of Appeals,
Western District.

Feb. 26, 2002.

cated.

Robert E. Sundell, Maryville, Zel Martin Fischer, Co-Counsel, Rock Port, for appellant.

David A. Baird, Maryville, for respondent.

Before JAMES M. SMART, Jr., Presiding Judge, HAROLD L. LOWENSTEIN, Judge and JOSEPH M. ELLIS, Judge.

JOSEPH M. ELLIS, Judge.

Shawn Eric DeFreece ("Father") appeals from the trial court's amended judgment dissolving his marriage to Ricki Dee DeFreece ("Mother"). Father challenges the trial court's decision to grant Mother primary physical custody of the parties' son, Dylan John DeFreece ("Dylan").

Father and Mother were married on October 17, 1998. Their only son, Dylan, was born on July 3, 1998. The couple lived at a farmhouse near Ravenwood, Missouri, on property that was owned by Father's family. Father worked at Loch Sand and Concrete. Mother worked at Heilig–Meyers furniture store but quit that job after Dylan was born to operate a daycare out of the home.

On June 15, 2000, Mother filed a Petition for Dissolution of Marriage. During this time, Mother began making arrangements to move to Baxter, Iowa, to be closer to her family. Mother secured a job

in Iowa as a collection counselor at Principal Residence Mortgage, a job which provided health insurance for Dylan. She made arrangements to rent an apartment and to place Dylan in daycare during the workday. Mother testified that Father had agreed that, when she moved to Iowa, she would have primary custody of Dylan. The day before she and Dylan were scheduled to move, Father asked to spend some time with Dylan. Father told Mother that he was going to take Dylan with him on a day trip to Maryville, Missouri. Father never returned with Dylan. Mother stated that she visited the home of one of Father's friends and made numerous phone calls to his family members, but was unable to locate Father or Dylan. She left messages on Father's cell phone and on the home answering machine, but he did not return her calls. Mother moved to Iowa as she had planned. For one week, Father did not return Mother's calls or allow her to have any contact with Dylan, including on Dylan's second birthday.

After one week, Father agreed to let Mother see Dylan. Mother testified, however, that he only allowed her to see Dylan after she agreed to sign a temporary custody agreement that granted Father primary custody. The parties filed the Temporary Custody/Visitation Agreement with the trial court on July 7, 2000. While the document designated Mother as the primary physical custodian, the visitation schedule actually provided that Dylan would reside primarily with Father and spend alternating weekends with Mother.[1]

The trial court entered its judgment dissolving the parties' marriage on February 5, 2000. The judgment awarded Father and Mother joint legal and physical custody of Dylan, but provided that Dylan would reside primarily with Mother in Iowa. The parenting plan provided that Father would have visitation on alternating weekends and for one week during the months of June, July and August. The agreement also set out a rotating holiday schedule.

On February 20, 2001, Father filed a Motion to Reopen and Modify Judgment; or in the Alternative, Motion for New Trial. The trial court denied the motion on February 28, 2001, and issued its Amended Judgment of Dissolution of Marriage, which changed the holiday visitation schedule in the parenting plan by granting Father visitation during certain holidays in even-numbered years instead of odd-numbered years. Father brings this appeal.

We will affirm a trial court's determination of custody unless there is no substantial evidence to support it, it is against the weight of the evidence or it erroneously declares or applies the law. *Edmison ex rel. Edmison v. Clarke*, 988 S.W.2d 604, 607 (Mo.App. W.D.1999). "An award of child custody should not be dis-

1. While appellant states in his brief that the Temporary Custody/Visitation Agreement awarded primary physical custody of Dylan to Father, the agreement actually designated "Petitioner," which would be Mother, as the primary physical custodian. However, the document also states that Dylan was in the "care and control of Respondent" at the time the agreement was signed and implies that Father would continue to be Dylan's primary physical custodian. The agreement stated that while Dylan was residing in Missouri with Respondent/Father, Petitioner/Mother would have the following visitation with Dylan in Iowa:

a. On Thursday, July 6, 2000, from 5 p.m. until Sunday, July 9, 2000, at 7 p.m.

b. Alternating weekends thereafter from 7 p.m. Friday until 7 p.m. Sunday.

c. At all other times and occasions as the parties may agree. In addition, the Petitioner shall be allowed to visit with the minor child in Nodaway County, Missouri, at all reasonable times and occasions and provided that she notifies the Respondent at least 24 hours in advance.

turbed unless the trial court's ruling is clearly against the logic of the circumstances or is arbitrary or unreasonable and the appellate court is firmly convinced that the welfare of the child requires some other disposition." *Lee v. Lee*, 967 S.W.2d 82, 86 (Mo.App. W.D.1998).

In his first point, Father claims the trial court erred in applying the law. He asserts that it was error for the trial court to award primary physical custody of Dylan to Mother, who resides in Iowa, without first determining that the relocation was in Dylan's best interest and without making findings of fact consistent with § 452.377, RSMo 2000.[2]

Section 452.377.9 requires a party seeking to relocate a minor child's principal residence to prove that the proposed move is made in good faith and is in the child's best interest. Father claims the court was required to apply the four-factors previously set forth in the case law and enunciated in *Sadler v. Favro*, 23 S.W.3d 253, 258 (Mo.App. W.D.2000) to determine whether the relocation was in Dylan's best interest. However, the Supreme Court overturned the rule in *Sadler*, holding that the four-factor test should no longer be used, pursuant to a 1998 amendment to § 452.377.[3] *Stowe v. Spence*, 41 S.W.3d 468, 469 (Mo. banc 2001); *Romanetto v. Weirich*, 48 S.W.3d 642, 645 (Mo.App. W.D.2001). As stated in *Stowe*, the four-part test enunciated in *Sadler* "is inconsistent with these statutory requirements and shall not be used in determining the child's best interests." *Id.* "Accordingly, the four-part test is no longer applicable to determining the propriety of the trial court's decision to allow a parent to relocate with a child to another state." *Romanetto*, 48 S.W.3d at 646. The statute "now requires the court to determine that the relocation: (1) is in the best interests of the child, (2) is made in good faith, and (3) if ordered, complies with the requirements of subsection 10." *Stowe*, 41 S.W.3d at 469. Subsection 10 of § 452.377 states the following:

If relocation is permitted:

(1) The court shall order contact with the nonrelocating party including custody or visitation and telephone access sufficient to assure that the child has frequent, continuing and meaningful contact with the nonrelocating party unless the child's best interest warrants otherwise; and

(2) The court shall specify how the transportation costs will be allocated between the parties and adjust the child support, as appropriate, considering the costs of transportation.

Section 452.377 is most frequently applied to cases where the parties are al-

---

**2.** Father raised this argument in his Motion to Reopen and Modify Judgment; or in the Alternative, Motion for New Trial. The transcript shows that the tape of the hearing on Father's motion was blank, aside from the introductory remarks.

**3.** The four factor test previously set out in the case law required the court to consider the following:

(1) the prospective advantages of the move, including a consideration of whether or not the move will improve the general quality of life for the party seeking to relocate and the child; (2) the motives of the party seeking to relocate, including a consideration of whether or not he or she is attempting to defeat or to frustrate the nonrelocating party's visitation rights; (3) the nonrelocating party's motives for opposing relocation, including a consideration of the extent to which it is intended to secure financial advantage in continuing child support; and (4) the realistic opportunity for visitation which can provide frequent, continuing and meaningful contact for the nonrelocating party with the child if the move is permitted.

*Sadler v. Favro*, 23 S.W.3d 253, 258 (Mo.App. W.D.2000).

ready bound by a court-ordered custody agreement, and the parent with primary custody seeks to change the child's residence and thereby alter the visitation plan. *See e.g. Spire v. Adwell,* 36 S.W.3d 28, 30 (Mo.App. W.D.2000); *In re S.E.P. v. Petry,* 35 S.W.3d 862, 865–66 (Mo.App. W.D. 2001); *Boling v. Dixon,* 29 S.W.3d 385, 387–88 (Mo.App. W.D.2000); *Romanetto v. Weirich,* 48 S.W.3d 642, 644–45 (Mo.App. W.D.2001); *Sadler,* 23 S.W.3d at 254–55. *But see Seaman v. Seaman,* 41 S.W.3d 889, 892–96 (Mo.App. W.D.2001) (applying the factors from § 452.375 and § 452.377 to an initial custody determination, where the judgment awarded primary custody to Mother and allowed Mother to remove children to Nebraska). The typical scenario is one where a divorced parent with primary custody decides that he or she wants to relocate and, as required by § 452.377, provides notice to the other parent of his or her desire to change the child's primary residence. *See Sadler,* 23 S.W.3d at 256. The other parent then objects to the relocation and, pursuant to the statute, files a motion seeking an order to prevent the relocation. *Id.* The party seeking to relocate then has the burden of proving that the relocation is in the best interests of the child and that the request is made in good faith. *Id.* at 256–57.

In the case at bar, the trial court was faced with the task of making an initial custody determination and not a motion to modify custody. "[A] different standard is applied when making an initial custody determination than when determining whether to modify custody." *Edmison,* 988 S.W.2d at 608. "[T]he initial determination of custody is made based on consideration of the eight factors set out in Section 452.375, not based on who happens to have actual custody of the child from the time of separation until the judge makes the custody determination." *Id.*

Section 452.375 requires courts " 'to determine custody in accordance with the best interests of the child.' " *Bauer v. Bauer,* 38 S.W.3d 449, 456 (Mo.App. W.D. 2001) (quoting § 452.375).

The statute requires courts to:

consider all relevant factors including:

(1)The wishes of the child's parents as to custody and the proposed parenting plan submitted by both parties;

(2) The needs of the child for a frequent, continuing and meaningful relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;

(3) The interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect the child's best interests;

(4) Which parent is more likely to allow the child frequent, continuing and meaningful contact with the other parent;

(5) The child's adjustment to the child's home, school, and community;

(6) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved. If the court finds that a pattern of domestic violence has occurred, and, if the court also finds that awarding custody to the abusive parent is in the best interest of the child, then the court shall enter written findings of fact and conclusions of law. Custody and visitation rights shall be ordered in a manner that best protects the child and the parent or other family or household member who is the victim of domestic violence from any further harm;

(7) The intention of either parent to relocate the principal residence of the child; and

(8) The wishes of a child as to the child's custodian.

*Id.* (quoting § 452.375.2).

From the language of the trial court's judgment, it is clear the court based its determination on the factors enumerated in § 452.375.2. The trial court stated in its judgment that it considered the following factors before determining that it was in Dylan's best interest that primary custody be awarded to Mother:

a. the wishes of the parents;

b. the needs of the child for frequent, continuing and meaningful contact with both parents;

c. which parent is more likely to allow the child frequent, continuing and meaningful contact with the other parent;

d. Respondent's intentional non-cooperation with Petitioner during the Summer of 2000;

e. heretofore Petitioner's primary role as caregiver for the minor child, although Respondent has demonstrated his ability in this regard during the immediately preceding six (6) months.

 The trial court expressly stated in its judgment that it was in Dylan's best interest that Mother and Father be granted joint custody, but that Dylan's primary residence would be with Mother in Iowa. In reaching its decision, the trial court considered numerous factors, including whether the relocation was in Dylan's best interest. It did not list Mother's relocation as one of the factors it considered in reaching its decision, but the trial court is presumed to have properly considered the statutory factors in making its determination. *Jones v. Jones,* 10 S.W.3d 528, 540 (Mo.App. W.D.1999). After considering all relevant factors, including Mother's intention to relocate Dylan's principal residence, the trial court determined it was in Dylan's best interest to reside with Mother in Iowa. The trial court was not then required to apply an additional three-factor test under § 452.377. "[N]o presumption of a continued right to custody arises from the fact that one party has had custody during the pendency of the proceeding." *Edmison,* 988 S.W.2d at 609. "To recognize such a presumption would be tantamount to treating an award of custody in a dissolution as a 'modification' of a prior court order entered after a full hearing on the merits." *Id.* (quoting *Horton v. Horton,* 961 S.W.2d 67, 70–71 (Mo.App. W.D.1997)). The purpose of each statute is to determine the best interests of the child, and a finding under § 452.375 that it is in Dylan's best interest to reside with Mother makes it unnecessary to then apply the three-factor test required under § 452.377.[4]

To reiterate, the trial court, in applying § 452.375.2, determined that it was in Dylan's best interest to reside primarily with Mother in Iowa. The court was not then required to apply § 452.377 and the three factors enumerated in *Stowe* and to make a secondary finding that the relocation was in Dylan's best interest. Had the court done so, however, there is ample evidence in the record to support findings that the

---

**4.** This conclusion is not inconsistent with our decision in *Seaman v. Seaman,* 41 S.W.3d 889 (Mo.App. W.D.2001). In *Seaman,* the mother had not yet moved to Nebraska at the time of the dissolution hearing but proposed to move there in the future. *Id.* at 895. Thus, unlike the instant case where Mother had already moved to Iowa, the court in *Seaman* had to determine whether the move was appropriate as part and parcel of the initial child custody determination. Moreover, we noted in *Seaman* that "much of the analysis is the same for the relocation as it was for the custody arrangements." *Id.* Accordingly, we briefly reviewed the relocation factors as well as the custody factors, but we did not hold that those factors are applicable to an initial custody proceeding. *Id.* at 894–96.

relocation was in Dylan's best interest as defined by *Stowe.*[5] Accordingly, it was not error for the trial court to determine custody by applying the factors enumerated in § 452.375. Point denied.

■ In his second point, Father argues that the trial court's determination that it was in Dylan's best interest to be in the primary physical custody of Mother was against the weight of the evidence. Father claims that consideration of the relevant statutory factors enumerated in § 452.375.2, particularly Mother's intent to relocate Dylan's principal residence, shows that primary custody should have been awarded to Father.

As stated, *supra,* the trial court applied the factors in § 452.375.2 before determining that it was in Dylan's best interest to reside primarily with Mother. In addition, there is not, as Father seems to suggest, a presumption that custody should remain with the parent who has primary custody during the pendency of the dissolution proceeding. *Edmison* 988 S.W.2d at 609. There was ample evidence to support the trial court's ruling that primary custody should be granted to Mother.

The first factor, which requires us to consider the parents' wishes, favors neither party, because both testified that they wanted primary physical custody and provided evidence that they had the ability to care for Dylan.

Factor two concerns the needs of the child for a meaningful relationship with both parents and the willingness of both parents to perform their functions as mother and father. This factor favors Mother, as the court emphasized her role as the primary caretaker for Dylan. The court also stated that Father had demonstrated ability in this area during the six months prior to trial. In addition, the evidence showed that Mother was more likely to ensure Dylan maintained relationships with both parents.

The third factor relates to the interaction of the child with parents, siblings and others. The court did not make a specific finding regarding this factor, and the evidence does not appear to favor either parent. The record shows that Dylan had a strong relationship with both parents as well as their respective extended families, although he had more contact with Father's family in Missouri because Missouri had been his primary residence.

Factor four requires the court to consider which parent is more likely to allow Dylan to have meaningful contact with the other parent. This factor favors Mother. The court emphasized in its judgment that

---

5. Factor one requires the court to determine that the relocation is in the child's best interest. The record shows that the trial court, in applying § 452.375.2, determined that it was in Dylan's best interest to reside primarily with Mother in Iowa. The court emphasized that Mother was more likely to ensure that Dylan had continuing contact with both parents.

Factor two requires the court to determine that the relocation is made in good faith. The record showed that Mother was from Iowa and moved to be closer to her family. Before moving, Mother had secured a job that provided health insurance for Dylan and made arrangements to rent an apartment.

Factor three requires the court to ensure that the child has continuing and meaningful contact with the nonrelocating parent through visitation and telephone access, unless such contact would not be in the child's best interest. The court must also specify how transportation costs will be allocated between the parties and adjust child support as needed. The court established a detailed visitation schedule allowing Father to have visitation on alternating weekends and for one week during the months of June, July and August. The visitation schedule also sets out a rotating holiday schedule. The agreement requires Mother and Father to divide transportation costs.

Father's "intentional non-cooperation" during July of 2000 was a factor in determining that Dylan should be placed in the primary care of Mother.

Factor five deals with Dylan's adjustment to home, school and community. The evidence showed that Dylan had resided in Missouri for the first two years of his life and enjoyed his home environment and daycare. However, there was no evidence to suggest that he would not adjust to Mother's home in Iowa.

The sixth factor does not apply because there was no evidence of abuse or domestic violence, nor does the eighth because there was no evidence regarding Dylan's preference for custody, due to his age.

Factor seven requires the court to consider the intention of either parent to relocate the child's primary residence. The court did not make a specific finding regarding Mother's intent to remain in Iowa with Dylan, except to state that it was in his best interest to reside primarily with Mother. In making this determination, the court emphasized the fact that Mother had been Dylan's primary caretaker and that Mother was more likely to ensure that Dylan had a meaningful relationship with both parents. The court established a detailed visitation schedule, ensuring that Father would be permitted to carry on a meaningful relationship with Dylan. The court's designated meeting place to exchange custody, a Texaco Station in Decatur, Iowa, was taken from the parties' temporary agreement. The visitation schedule was similar to the plan outlined in the parties' temporary agreement, except that Father was granted visitation on alternating weekends and primary custody was granted to Mother.

There is ample evidence to support the trial court's determination that it was in Dylan's best interest to reside primarily with Mother. Point denied.

The judgment is affirmed.

All concur.