In re the Marriage of: Nathan
D. LOWERY, Appellant,

v.

Shayla R. LOWERY, Respondent.

No. ED 91383.

Missouri Court of Appeals,
Eastern District,
Division Two.

May 12, 2009.

Elaine A. Pudlowski, St. Louis, MO, for Appellant.

Myia M. McKenna, St. Louis, MO, for Respondent.

ROY L. RICHTER, Presiding Judge.

Nathan Lowery ("Father") appeals the trial court's judgment allowing Shayla Lowery ("Mother") to relocate to Florida with the divorced couple's minor child. We reverse that portion of the judgment permitting relocation to Florida.

## I. BACKGROUND

Father and Mother married in June 2003 in St. John's County, Florida. Their daughter Ivy Danielle Lowery ("Ivy") was born in February 2005 in St. Augustine, Florida. In its judgment dissolving their marriage, the trial court granted Mother sole physical custody of Ivy and granted her permission to relocate to St. Augustine, Florida with Ivy.

Mother and Father met in St. Augustine and began dating in 2001 when they were 17 and 16 years old, respectively. Mother's mother did not allow her to live at home once she turned 18, so Mother moved in with Father and his parents ("the Lowerys"). Mother and Father were both still in high school at that time. With the exception of a few short intervals, Mother and Father always resided with Father's parents while they lived in St. Augustine.

In January 2006, the Lowerys moved to St. Louis from St. Augustine so that Father's mother ("Mrs. Lowery") could obtain her L.L.M. degree at Washington University. Father and Mother were financially dependent on the Lowerys, so they agreed to move St. Louis, too. Mother and Father continued to live with the Lowerys at their home in St. Louis until they separated in January 2007, at which point Mother moved into a place of her own. Father remained at his parents' house. Until the dissolution, Mother and Father followed their own visitation schedule, and essentially shared equal custody of Ivy. In its judgment of dissolution, however, the trial court granted Mother's request to relocate with Ivy to St. Augustine, Florida. Father challenges this action. Further facts are cited below insofar as they relate to the points on appeal.

## II. DISCUSSION

Our standard of review is governed by *Murphy v. Carron*, and we must affirm the trial court's custody determination unless it is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. *Seaman v. Seaman*, 41 S.W.3d 889 (Mo.App. W.D.2001). We presume that the child's best interests motivated the trial court. *Id.* We will affirm the trial court's decision unless we are firmly convinced the child's welfare requires some other disposition. *Id.*

Because we believe Father's second point is dispositive of his appeal, we address it first. In his second point on appeal, Father argues that the trial court's decision that relocation was in Ivy's best

interests was not supported by substantial evidence. We agree.

When a court makes an initial custody determination, as it did in this case, it does so pursuant to Section 452.375 RSMo Cum.Supp.2007.[1] *Day ex rel. Finnern v. Day,* 256 S.W.3d 600, 602–3 (Mo.App. E.D. 2008). The court considers one parent's intent to relocate the child pursuant to the factors enumerated in Section 452.375 and is not required to consider the relocation statute, Section 452.377 RSMo 2000. *Day,* 256 S.W.3d at 603; *Dunkle v. Dunkle,* 158 S.W.3d 823, 835 (Mo.App. E.D.2005). *But see Seaman v. Seaman,* 41 S.W.3d 889 (Mo.App. W.D.2001) (considering both statutes when the mother had not yet moved to Nebraska at the time of the dissolution hearing but proposed to do so in the future).

Section 452.375 requires a court to determine custody in accordance with the best interests of the child pursuant to the factors enumerated in subsection 2. *Vaughn v. Bowman,* 209 S.W.3d 509, 512 (Mo.App. E.D.2006). Section 452.375.2(7) requires the trial court to consider the intention of either parent to relocate the child's principal residence as it affects the child's best interests. In the present case, the trial court found that both Mother and Father were capable of being good parents and would allow meaningful contact with the other parent. The crucial issue at trial and the focus of the trial court's judgment was Mother's intent to relocate with Ivy to St. Augustine, Florida.

Mother testified at trial as to why she desired to relocate to St. Augustine and why she believed it would be in Ivy's best interests. Mother stated that she lived in St. Augustine from 1997 until 2006 and that her mother, friends and co-workers still live there. She said she moved to St. Louis in 2006 only because Mrs. Lowery began pursuing her L.L.M. degree at Washington University, and that she always thought the move was temporary. Mother testified that she and Father followed the Lowerys to St. Louis because they depended on the Lowerys for financial assistance. Mother stated that since she and Father separated, she needs family support to raise Ivy, and that none of her family lives near St. Louis. Mother believes she will have the necessary family support in St. Augustine because her mother lives there, and because her brother, sister, and ex-stepfather live about three hours from St. Augustine, in Midway, Georgia. Mother said she believed it was in Ivy's best interests to know her maternal side of the family. Finally, Mother cited parenting disagreements with Father's family, such as disputes over potty training and taking Ivy to the doctor, in support of her contention that she could not raise Ivy peacefully with the Lowerys around.

■ However, Mother presented no solid plans about what she would do once she moved to St. Augustine. She testified that she had done little to prepare or plan for her move other than to save $200. She had not found an apartment or a house, but testified that she planned on staying with her mother until she and Ivy found a place of their own, but presented no evidence concerning those proposed living arrangements. Mother also did not have a job in Florida, but testified that she believed she could obtain employment at the Publix grocery store where she had worked previously. Finally, Mother did not know what school Ivy would attend, but summarily stated that Florida has good schools. Mother therefore did not provide the trial court with evidence concerning Ivy's proposed living environment.

1. All further statutory citations are to RSMo Cum.Supp.2007 unless otherwise noted.

"A good living environment and a stable home are primary considerations in determining a child's best interests." *Karolat v. Karolat*, 151 S.W.3d 852, 862 (Mo.App. W.D.2004) (citing *Spire v. Adwell*, 36 S.W.3d 28, 32 n. 1 (Mo.App. W.D.2001)). Missouri courts commonly reject relocation requests when a parent's relocation plan lacks specificity regarding the child's future living environment. *See Wilson v. Wilson*, 873 S.W.2d 667, 670 (Mo.App. E.D.1994) (stating that failure to provide a plan for living arrangements that would support a stable environment for the child is sufficient in and of itself to deny a parent's relocation request); *Fohey v. Knickerbocker*, 130 S.W.3d 730, 735 (Mo. App. E.D.2004) (citing various cases that turned on the parent's presentation of the proposed living environment).[2]

In *Fohey*, for example, this Court reversed a trial court's decision to allow a mother to relocate to Texas with the divorced couple's five-year-old daughter, Myranda. The mother had been offered a higher-paying job in Fort Worth with better benefits and on-site daycare. *Id.* at 733. However, the mother did not know where she and Myranda would live or what schools Myranda would attend, and acknowledged that she did not have any friends or family in the Fort Worth area. *Id.*

This Court held that the mother had failed to present substantial evidence that relocating to Texas was in Myranda's best interests. *Id.* at 740. We emphasized that the mother had not presented evidence regarding Myranda's new living environment, neighborhood, recreational opportunities, or her new home. *Id.* at 735. We then cited a litany of cases for the proposition that a parent's failure to provide specifics about a child's proposed living situation may be fatal to a relocation request. *Id.*

Unlike the mother in *Fohey*, Mother did not have a job offer in St. Augustine, much less a higher-paying one. The *Fohey* mother claimed that her increased salary in Ft. Worth would inure to her daughter's benefit, but Mother could make no such claim here. The testimony at trial actually indicated that Mother might receive a reduced salary in Florida. Mother testified that she had previously made $10 per hour at the Publix grocery store in St. Augustine where she would seek reemployment if allowed to relocate. Mother said she currently makes $14 per hour at the Schnucks bakery plant in St. Louis. Mother also indicated that she would like to pursue a career in court stenography, but at the time of trial had not taken any steps towards that goal.

Mother also testified that she did not know where she and Ivy would live, what school Ivy would attend, or who would provide daycare for Ivy. Mother said she planned to rely occasionally on her own mother for daycare support, but also stated that her mother had seen Ivy only once since 2006.[3] Mother testified that she had an amicable relationship with her mother,

---

2. Many of the cited cases are relocation cases decided pursuant to Section 425.377 RSMo 2000. It is appropriate to rely on these cases because, in making a best interest determination pursuant to Section 425.377, the relocation statute, the trial court must look to the enumerated factors in Section 452.375.2, the custody statute applicable to this case. *See Vaughn v. Bowman*, 209 S.W.3d 509, 512 (Mo.App. E.D.2006).

3. We note that Mother testified that her work schedule and financial situation in St. Louis prohibited her from traveling to Florida to see her mother; she said she could not take vacation from her job at Schnucks for one year after she began working. We fail to see how Mother's situation would change, *vis-a-vis* Father, were she to move to Florida and start a new job there.

but the testimony also indicated that Mother's mother had refused to let her live at home after age 18 and had not given her any financial assistance since then. In sum, Mother did not present any evidence that Ivy would enjoy a better, or even an equal, standard of living in St. Augustine.

In its judgment, the trial court emphasized that Mother lived independently whereas Father lived at home and relied on his parents' support. The court acknowledged Ivy's paternal grandparents' positive contribution to her upbringing, but said it was ultimately Father's responsibility to parent his child. The court noted that Father would not attempt to set up an independent household for at least another four years, when he would graduate from college. The judgment stated that Mother lived within her means, and chastised Father for his "immaturity and fiscal irresponsibility in his choice of transportation and monthly expenses."[4] The court recognized that Mother did not have the same financial security as Father, but felt that she, unlike Father, had shown her willingness to accept the responsibilities of parenthood. The court stated that, "[t]o deny relocation would be to deny [Mother] the support of her own family and the chance to pursue her own career path without scrutiny from [Father] or his parents."

Father essentially argues that Mother presented substantial evidence that relocating to Florida was in her own best interests, but failed to present substantial evidence that relocating was in Ivy's best interests.

■■■ "It is the declared public policy of this state that it is in the best interest of a child to have frequent, continuing, and meaningful contact with both parents after the parents have dissolved their marriage." *Fohey,* 130 S.W.3d at 738. While we are mindful that a court may permit a parent to relocate despite the fact that doing so will impair visitation for the non-custodial parent, the relocation must still be in the child's best interests. *Id.*

The *Fohey* Court found that Myranda's father was extremely involved in her life and saw her on average nine out of every fourteen days. *Id.* at 737. Though the trial court's visitation schedule allotted generous visitation time for the father, this Court held that much of the visitation would be spent traveling to and from Fort Worth. *Id.* at 738. The travel would be onerous to all parties involved, and would deprive Myranda of consistent contact with her father. *Id.*

While Father works full-time and attends school part-time, the evidence at trial showed that he maintains an active role in Ivy's life. Father and Mother have had equal custody of Ivy since their separation. Father testified that he schedules his on-line classes for the evenings he does not have custody of Ivy. Furthermore, Father maintains health insurance for Ivy, takes her to doctor visits, and buys her clothes and toys. We do not believe that Father has neglected his responsibility to parent his child simply because he chose to live with his parents in order to save money, or because his own father, Mr. Lowery, baby sits Ivy while Father is at work.

We also believe there are serious questions as to the feasibility of the trial court's visitation schedule.[5] The schedule affords

---

4. Father recently purchased a 2008 Harley–Davidson motorcycle for $13,500. He also makes $100 monthly payments to fulfill a contractual obligation on a two-year gym and tanning membership.

5. Mother's lack of planning was evident with respect to visitation, as well. When asked if she was up for the financial commitment of bringing Ivy to visit her Father in Missouri,

Father two weeks of visitation every other month until Ivy begins kindergarten. Mother must transport Ivy from Florida to Missouri, and Father is responsible for the return transportation. The distance from St. Louis to St. Augustine exceeds 1,000 miles and takes approximately 21 hours to drive. Both parties acknowledged that their financial situations would require them to drive back and forth rather than to fly. Mother testified that she has a 2000 Ford Mustang with 138,000 miles on it and Father stated he probably would need to borrow a friend's car in order to make the trip. Even if the parties' vehicles enable them to honor their visitation commitments, the travel will be extremely arduous to everyone involved, and most especially to 4–year–old–Ivy.

Given the aforementioned indicators, the only logical conclusion to draw from the evidence at trial is that Father would be deprived of meaningful contact with Ivy were Mother allowed to move to Florida. While frequent and meaningful contact can be accomplished, in part, through the telephone, it is a far less-effective communication tool with a child as young as Ivy. We believe the burdens of traveling to and from Florida in addition to Ivy's decreased contact with her father do not support the trial court's findings that relocation is in Ivy's best interests. *See Fohey*, 130 S.W.3d at 738; *Abernathy v. Meier*, 45 S.W.3d 917, 925 (Mo.App. E.D.2001) (noting that frequent travel may run contrary to a child's best interests and may have deleterious effects on a young child).

Furthermore, Ivy currently has frequent contact with her paternal grandparents. Mr. Lowery baby sat Ivy before Father and Mother separated, and he continues to do so on the days Father has custody while Father is at work. While Mother testified that it was in Ivy's best interest

to form relationships with her maternal side of the family, it is uncertain whether or not these relationships would develop if Mother were allowed to relocate. As noted, Mother's mother has seen Ivy only once since 2006, and the rest of Mother's family lives in Georgia, a three hour drive from St. Augustine.

We are sympathetic to Mother's situation. She left her job, friends, and mother in St. Augustine in order to live, temporarily, she believed, with Father and the Lowerys in St. Louis. Father and Mother were (and still are) young parents with a young child, and they depended on the Lowerys for financial support. Father and Mother's marriage fell apart and now she desires to move back to St. Augustine in order to be closer to her relatives and further from the Lowerys.

The evidence presented at trial indicated that returning to Florida would likely be in Mother's best interests. However, the evidence provided to the trial court by Mother did not support a finding that moving to Florida would be in Ivy's best interests, and that is the only inquiry with which we are concerned. Mother did not present any evidence of Ivy's future living environment, the schools she would attend, her recreational opportunities, or her daycare provider. More importantly, Mother does not have a job or an apartment in Florida, nor any articulated plan for housing or employment upon her arrival there. These facts, combined with the rigorous travel involved with visitation, indicate that moving Ivy to Florida is not in Ivy's best interests.

Substantial evidence means "competent evidence from which the trial court could reasonably decide the case." *Dunkle*, 158 S.W.3d at 832. Given the evidence in the

Mother said she would "figure something out."

record, or lack thereof, we do not believe there was substantial evidence to support the trial court's finding that Mother's relocating with Ivy to Florida was in Ivy's best interests. Point granted.

Because we granted Father relief on his second point, it is not necessary to address his remaining points.

### III. CONCLUSION

The judgment of the trial court permitting Mother to relocate to Florida with Ivy is reversed, and all other provisions of the judgment are affirmed.

LAWRENCE E. MOONEY, and GEORGE W. DRAPER III, JJ., concur.