

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FIVE

| | | |
|---|---|---|
| PAUL L. PASTERNAK, | ) | ED100439 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Francois County |
| v. | ) | 10SF-DR00649-01 |
| | ) | |
| DENISE M. PASTERNAK, | ) | Honorable Shawn R. McCarver |
| | ) | |
| Respondent. | ) | Filed: August 19, 2014 |

## Introduction

Paul Pasternak (Father) appeals from the trial court's Judgment granting Denise Pasternak's (Mother) motion to relocate the minor children and modifying the prior dissolution judgment to grant Mother sole legal custody over the children. In his four points on appeal, Father argues the trial court erred in approving Mother's request to relocate the children, because the move was not made in good faith and was not in the best interests of the children. He also argued the court erred in granting Mother sole legal custody, because there was not substantial evidence of a change in circumstances since the prior judgment and the change was not in the best interests of the children. We reverse the judgment of the trial court and remand for entry of judgment in accordance with this opinion and for a redetermination of legal custody.

## Background

The parties' marriage was dissolved in 2011. The dissolution judgment awarded Mother and Father joint legal and joint physical custody of the minor children: A.J.P., born in 2005, and A.P.P., born in 2008. The children's primary residence was with Mother, and Father exercised visitation on Wednesdays and every other weekend, Friday afternoon through Monday morning. At the time of dissolution, Father taught at the North County School District in Farmington, Missouri, and Mother taught at the Central R-III School District (Central) also in Farmington. The marital home was located within the Central district, so the children attended Central. Father remained in the marital home following the divorce.

As relevant for this appeal, in September of 2012, Mother filed a motion to modify the dissolution judgment requesting sole legal and physical custody. In May of 2013, she gave Father proper notice, pursuant to Section 452.377.7,[1] that she intended to relocate the children from Farmington, Missouri to Silva, Missouri where she had a new job beginning in July of 2013. Father filed a petition to prohibit her relocation and a motion to modify. In the petition to prohibit relocation, Father asserted the proposed move would deny him visitation during the week and would preclude him from maintaining an active role in the children's lives. He further requested that the dissolution judgment be modified to award him sole legal and physical custody of the children.

Mother responded that she was relocating because she had lost her job in the Central school district. Moreover, she asserted the proposed relocation would improve the children's standard of living and allow them to be closer to her family, and the children would benefit from increased distance between Mother and Father, who have a negative relationship.

---

[1] All statutory references are to RSMo. 2000 as supplemented unless otherwise noted.

At the subsequent trial on Mother's proposed relocation and the parties' respective motions to modify, Mother presented the testimony of James Womack, a social worker for the Southeast Mental Health Clinic. Womack testified that he had provided counseling services to A.J.P., during which he had witnessed the conflict-laden relationship between Mother and Father. He stated both parents were equally to blame for the fighting. He noted the conflict was negatively affecting the children. Regarding A.J.P.'s learning disability, Womack acknowledged that A.J.P. had an individualized education program (IEP) at Central that was working well. Last, Womack testified it was his opinion that because the children had already been through many changes, it would be better for the children to maintain the current visitation schedule, thus minimizing any further changes.

Father testified to the following. He recounted many incidences of conflict between him and Mother. He acknowledged that he and Mother have had trouble communicating about issues involving the children, but stated he thought they would do better in the future. He stated that the main source of their conflict was his initial objection to prescribing A.J.P. Adderall for ADHD, and that his objection had stemmed from Mother's failure to include him in the decision and his belief that prescription medication should be a last resort. He agreed that he had refused to administer the medication until a specialist in neurology had confirmed the diagnosis and recommended medication. He stated that following the specialist's diagnosis, he now consistently administered A.J.P.'s ADHD medication in accordance with the doctors' instructions. Moreover, he testified that Mother did not always comply with A.J.P.'s IEP: the IEP recommended he attend 19 days of summer school, but Mother did not require him to attend every day.

3

Father testified he was very involved in the day-to-day activities of the children's lives. During the school year, he took them to athletic events and games, he attended the children's school music programs, book fairs, and class parties, he chaperoned field trips for the children's classes when he was able, and he coached the children's baseball team. He objected to Mother's proposed relocation because the move would remove the children from the community in which they grew up. The children have family and many friends in Farmington, and Farmington has better community facilities than Silva. Moreover, the move would place the children in the Greenville School District (Greenville), which he believed to be far inferior to Central. Greenville has limited after-school activities and sports, and has a lower graduation rate than Central.

Mother testified to the following. She had been a tenured special education teacher at Central. She began getting unfavorable performance reviews following her divorce in 2011, for failing to incorporate life skills into her curriculum, and failing to timely complete IEP paperwork. Between the fall of 2011 and the spring of 2013, she received numerous warnings to correct deficiencies in her work or face termination. When she failed to make the requested improvements, she received notice her contract would not be renewed for the 2013-2014 school year, at which point she resigned. She acknowledged that the loss of her position at Central was her responsibility for her failure to improve. She accepted a position at Greenville with an approximate $20,000 pay decrease from her salary at Central. Greenville is located near Silva, which is approximately 56 miles from Farmington.

She believed there was a good chance for advancement at Greenville once she completed her master's degree. She was working towards a master's degree from Southeast Missouri State University in Cape Girardeau, which was 90 minutes from the Greenville/Silva area. She

4

anticipated that a director position at Greenville would open in two years, which she would be eligible for once she finished her master's degree. The director position would provide a $10,000 raise. On cross-examination, Mother agreed that while Central assisted with the cost of her master's degree, Greenville did not and she would need a loan to cover the cost of finishing the program. She further agreed she would have to take classes online and was not sure if Greenville would approve an online degree.

She felt Greenville would be better for the children than Central, because at Greenville the teacher/student ratio was 1:14 versus 1:18 at Central, and A.J.P. would benefit from more personal attention, smaller class sizes, and a smaller community. Greenville had been recognized in May of 2013 by U.S. News & World Report magazine as one of the best small high schools in the nation, based on test scores, and the elementary school was brand new.

Because her salary at Greenville was substantially lower than at Central, she stated she would not be able to afford housing in Farmington or gas for the commute from Farmington to Silva. She planned to rent a home in Silva with a large yard, which she stated would be an improvement over her condominium in Farmington, which did not have a yard. She planned to live near her parents in Silva, which she believed would be good for the children, because they are close with her parents. The children had many friends and cousins in Silva.

She related many incidences of conflict between her and Father. She agreed, however, that Father loved the children, had not missed any of his visitation with the children, and attended most school events and programs. She acknowledged that by relocating, Father would lose his every Wednesday overnight visitation, alternating Sunday overnight visitation, and seven floating overnights. She also acknowledged that during the pendency of the divorce she had contemplated a move to Poplar Bluff, but opted not to move because it was not in the best

5

interests of the children, stating, "I felt that turning in an application was not what was best—in the best interests for my kids. And so I needed to be a mother first off, and so I stayed because the kids needed to be here."

The trial court in a detailed opinion found that Mother's proposed relocation was made in good faith due to the non-intentional loss of her job, stating that it found her testimony and evidence to be credible. Closely examining each of the factors under Section 452.375.2, the court then found the relocation to be in the best interests of the children. The court noted the relocation necessitated a change in the custody arrangement, and it found the parents were unable to parent jointly. Based largely on the evidence of Father's attempts to alienate the children's affection from Mother and Father's reluctance to administer the prescribed ADHD medication even after receiving a second and third opinion, the court granted sole legal custody to Mother. To offset the time Father would lose as a result of the relocation, the court modified the custody arrangement allowing Father more time in the summer. This appeal follows.

Discussion

Points on Appeal

Father raises four points on appeal. In points one and two, he argues the trial court erred in approving Mother's request to relocate the children, asserting (1) the court's finding that the relocation was made in good faith was not supported by substantial evidence and was against the weight of the evidence; and (2) the court's finding that the relocation was in the best interests of the children was not supported by substantial evidence, but rather the weight of the evidence supported denying the relocation request. In points three and four, Father argues the trial court erred in modifying the prior judgment of dissolution to grant sole legal custody to Mother, because (3) there had not been a change in circumstances, in that both parents had indicated a

6

willingness to work toward future cooperation; and (4) such a change was not in the best interests of the children.

Because we reverse on point II, we begin our analysis there and we find it is not necessary to reach the merits of points I, III, and IV.

## Point II

In his second point on appeal, Father argues the trial court erred in approving Mother's request to relocate the children, asserting the court's finding that the relocation was in the best interests of the children was not supported by substantial evidence, but rather the weight of the evidence indicated the children would be better served by maintaining frequent contact with both parents, as provided by the prior custody plan, and by keeping the children in their current school district. We agree.

We review the trial court's judgment granting or denying permission to relocate minor children pursuant to Murphy v. Carron, 536 S.W.2d 30 (Mo. banc 1976). Vaughn v. Bowman, 209 S.W.3d 509, 511 (Mo. App. E.D. 2006). We will affirm the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. Id. We view the evidence and all reasonable inferences therefrom in the light most favorable to the judgment, disregarding contrary evidence and inferences. Id. We will, however, set aside a judgment as being against the weight of the evidence that we firmly believe to be wrong, or when the judgment is clearly against the logic of the circumstances. Id.

Section 452.377.9 provides that the party seeking relocation shall have the burden to prove the proposed relocation is made in good faith and is in the best interests of the children. Section 452.377.9. To determine whether a proposed relocation is in the best interests of a child, the trial court looks to the factors set forth in Section 452.375.2. Abernathy v. Meier, 45 S.W.3d

7

917, 924 (Mo. App. E.D. 2001). These factors include: (1) the wishes of the parents; (2) the needs of the child for a frequent, continuing and meaningful relationship with both parents and the willingness of both mother and father to parent the child; (3) the relationship of the child with parents, siblings and other family; (4) which parent is more likely to allow the child frequent, continuing and meaningful contact with the other parent; (5) the child's adjustment to the current home, school, and community; (6) the mental and physical health of all individuals involved; (7) the intention of either parent to relocate; (8) and the wishes of the child. Section 452.375.2. The trial court conducted a thorough examination of each factor, which we will not duplicate here.

The paramount concern is the best interests of the children. Fohey v. Knickerbocker, 130 S.W.3d 730, 734 (Mo. App. E.D. 2004). The requesting parent must demonstrate best interests with direct, not conclusory, evidence. Id. at 735-36. Disputes involving the relocation of a child must be resolved on the particular facts of the case, rather than on the rigid application of rules. Brethorst v. Brethorst, 50 S.W.3d 864, 867 (Mo. App. E.D. 2004). Here, looking at the particular facts in the record, we find that Mother did not present direct evidence supporting her claims that the Greenville schools and Greenville/Silva community would be better for the children or that her new employment would benefit the children, and we do not find that the reduction in day-to-day contact between the children and Father is in the best interests of the children.

Regarding whether it was in the best interests of the children to attend the Greenville schools, Mother testified the Greenville elementary school building was new, but not that it was a better school than Central. She posited that the lower teacher student ratio of 1:14 was better for A.J.P.'s ADHD diagnosis than the 1:18 ratio at Central. The difference in class size was the only benefit Mother named in support of her contention that Greenville would be better for the

children than Central. This minimal difference in class size is not sufficient on its own to establish that relocating to the Greenville school district would be in the best interests of the children. Moreover, she did not present evidence of how Greenville would address A.J.P.'s learning disability and how they would adapt his existing IEP. Mother's conclusory evidence was insufficient to prove that moving the children to Greenville from Central school district was in their best interests. See Fohey, 130 S.W.3d at 735-36. Rather, the evidence was that it would not be in the children's best interests to relocate. A.J.P.'s counselor Womack, who was Mother's witness, testified that it would be best for the children to maintain the current visitation schedule, which would necessitate staying in Farmington. And even Mother testified that when she had been contemplating a move to Poplar Bluff during the pendency of the divorce, she opted not to move because moving would not be in the best interests of the children.

Likewise, Mother failed to present direct evidence supporting her conclusion that moving to the Greenville/Silva community would be in the children's best interests. Id. Rather, she acknowledged that there were fewer community resources in Silva and fewer after-school and sport activities at the Greenville school district. While she had family in Silva and the children had friends in Silva, the same was true for Farmington. The evidence showed the children were attached to their current home and community, and Womack testified it would be better for the children not to move. Section 452.375.2.

Also as support for relocation, Mother argued that the proposed relocation would benefit the children because the position at Greenville would allow greater opportunity for career advancement. A parent's career advancement alone does not meet the criteria for approving relocation. To meet the criteria for relocation, the parent seeking relocation must demonstrate with direct evidence how the new job will be in the child's best interests. It is unclear from the

9

record here how the children would benefit from Mother's potential appointment to a director position. See Fohey, 130 S.W.3d at 736. First, while direct evidence of benefits can include employer-sponsored tuition reimbursement, scholarships for employees' children, cheaper health insurance, and family memberships to the YMCA, see Abernathy, 45 S.W.3d at 926, there was no evidence of such benefits here. Second, while an increase in salary can be evidence that relocation will be in the best interests of the children when it allows a better standard of living, see id., Mother's new employment comes with a substantial pay decrease. Third, the record failed to show that the position at Greenville would allow for greater career advancement. Rather, the record suggests that Mother's anticipated career advancement is highly speculative: unlike Central, Greenville will not assist with the cost of obtaining her master's degree and she will have to secure a loan. Moreover, Mother admits she will have to complete her degree online but does not know if an online degree will even qualify her for a director's position at Greenville.

As for the children's relationship with Father, the record demonstrated that Father had significant visitation with the children during the school year and fifty-fifty custody during the summer. During the school year, he had custody every Wednesday night, every other weekend from Friday after school through Monday morning, and seven floating overnights. Mother testified that Father always exercised his visitation. It is the declared public policy in Missouri that the best interests of the children is served by frequent, continuing, meaningful contact with both parents. Fohey, 130 S.W.3d at 738. In situations where, as here, the parents exercise joint custody, Missouri courts have been less willing to find that a modified visitation schedule after relocation can preserve the existing relationship between the child and noncustodial parent. See e.g., Buschardt v. Jones, 998 S.W.2d 791, 798 (Mo. App. W.D. 1998); Puricelli v. Puricelli, 969 S.W.2d 289, 297 (Mo. App. E.D. 1998).

10

Here, both Mother and Father took frequent responsibility of the children during the week and were involved in their day-to-day lives. Father frequently took the children to athletic events and games, he coached their baseball team, he attended the children's school music programs, book fairs, and class parties, and he chaperoned field trips for the children's classes when he was able. Were the children to relocate to Silva, while not a great distance from Farmington, Father would be effectively removed from the children's school days and would not be able to regularly attend school events or participate in school-day activities as he had been doing.

We are mindful that when relocation is otherwise in the best interests of the child, the trial court may properly allow the relocation of the child even when relocation will make visitation difficult for the noncustodial parent. Nevertheless, the decrease in frequent and meaningful contact between the children and their Father here does not support a finding this relocation is in the children's best interests. We acknowledge that Mother's relocation from Farmington to Silva was a move of only 56 miles, while much of the relevant Missouri caselaw involves moves of many hundreds of miles. Nevertheless, each request for relocation is decided on the unique and particular facts of that case, and the court's overriding concern is the best interests of the children. Mantonya v. Mantonya, 311 S.W.3d 392, 402 (Mo. App. W.D. 2010) (relocation of fifteen miles to different school district was not in best interests of child).

Moreover, the trial court found that increased distance between the parents, who have displayed constant animosity towards each other, would reduce stress on the children and be in their best interests. While it is certainly true that the parents' shockingly irresponsible behavior towards each other in front of the children caused the children stress and embarrassment, this stress did not appear from the record so severe as to outweigh the children's need for frequent, continuing, and meaningful contact with both parents. Both parents love the children and,

11

despite the evidence of friction between the parents, there was no evidence in the record of abuse toward the children. This Court is concerned solely with the best interests of the children. See Lowery v. Lowery, 287 S.W.3d 693, 698 (Mo. App. E.D. 2009).

Finally, we recognize that the practical implications of this decision will place a burden on Mother, giving her the choice of either a long commute to Greenville on a reduced salary or to seek new employment closer to Farmington. Nevertheless, the concern of this Court is with the best interests of the children, not what is convenient for either parent. See id. Point II is granted.

Because we grant Father relief on his second point, it is not necessary to address the merits of his remaining points. Point I is rendered moot.[2] Points III and IV address the trial court's modification of the original dissolution judgment by granting sole custody to Mother. The trial court had modified the legal custody arrangement *because* the children were removed from Farmington to Silva. In light of our reversal of the relocation, we remand for the trial court to reconsider its modification of legal custody.

## Conclusion

The judgment of the trial court permitting Mother to relocate to Silva, Missouri, with the minor children is reversed, and we remand for the trial court to deny Mother's motion for

---

[2] While we do not address the merits of Point I, we are skeptical that Mother made the relocation fully in good faith. Looking at the timeline, in March of 2011 Mother applied for a position in Poplar Bluff, stating she wished to move, but then withdrew her application upon the advice of her attorney. Just months later in May of 2011, Mother began receiving negative reviews at Central. For the next two years, she failed to comply with multiple deficiency and improvement plans and disregarded warnings about her performance, until she received notice in March of 2013 that her contract as a tenured teacher would not be renewed. She did not appeal the loss of her tenured position. While she applied at many school districts with varying proximity to Farmington, she accepted a position in the town where her parents live and closer to where her boyfriend lives. Although she was subsequently offered an interview at a school district closer to Farmington, she did not schedule an interview, stating she had already accepted the position in Silva. Nevertheless, in light of our reversal, it is not necessary for this Court to determine whether Mother lost her job and had to move, or whether she decided to move and then lost her job.

12

relocation and to reinstate the prior visitation schedule in accordance with this opinion and for a determination of legal custody in light of the new order.

_____
Gary M. Gaertner, Jr., Judge

Robert M. Clayton III, P. J., concurs.
Gary A. Kamp, S. J., concurs.